# Alabama Great Southern Railroad Company v. McAlpine & Co.

*Action against Railroad Company for Damages to Stock.*

1. *Railroad companies; care and diligence in running trains.*—The rule governing the duty and liability of railroad companies in running

[Alabama Great Southern Railroad Company v. McAlpine & Co.]

their trains is, that their employees must bestow on the service that degree of care and diligence which very careful and prudent persons give to their own affairs of similar magnitude and delicacy.

2. *Same; presumption of negligence.*—When injury has been shown to have been inflicted by a railroad company, in the running of its train, the burden is shifted to the company to repel the imputation of negligence, by proof sufficient to establish a *prima facie* case of proper diligence.

3. *Same; non-observance of statutory rules; liability resulting from.* It is the duty of employees of railroad companies to observe the statutory regulations as to blowing whistle, etc. (Code, 1876, § 1699); and in case of injury done by a running train, which could be reasonably traced to a non-observance of these regulations, it becomes the duty of the company to prove that they had been complied with; but this principle can not be extended to such injuries as are not caused by non-observance of the regulations.

4. *Same; diligence required of, in running trains.*—The law does not require that a railroad company, in its management of a running train, should attempt the impossible in order to prevent injury or accident; yet, it must resort to the necessary appliances to prevent injury or accident, so long as there is hope; and, when sued, the *onus* is on the company to show the utter fruitlessness of any attempt that might be made.

5. *Same; when company not liable for injury to stock.*—If a moving train of a railroad company has a proper head-light and brakes in good order, is skillfully officered, is not running at undue speed, and the officers and agents directing the movements of the train are attentive and vigilant, and guilty of no negligence, then, if by reason of the weather, or other unavoidable hinderance, an animal on the track is not seen until it is too late to save it by the use of the appliances belonging to the train, the company is not liable for the loss or injury.

6. *Same; liability for interest on damages for injury to stock.*—A charge instructing a jury, in a case against a railroad company to recover damages for killing stock, that if they found the issues in favor of the plaintiff, they should ascertain the value of the stock killed, and return a verdict therefor, with interest thereon from the date of the loss to the time of the trial, is free from error.

APPEAL from Greene Circuit Court.

Tried before Hon. S. H. SPROTT.

This was an action by J. A. McAlpine & Co. against the Alabama Great Southern Railroad Company, a corporation operating a railroad in this State, to recover damages for injuries alleged to have been done to a mare and mule, the property of the plaintiffs, by the defendant's locomotive and train of cars, through and by reason of negligence and want of care on the part of defendant's agents in the management and running of said locomotive and train. The defendant pleaded (1) the general issue; (2) that at the times said mule and mare were alleged to have been injured or killed, they were not the property of the plaintiffs; and (3), in substance, that the plaintiffs suffered said mare and mule to run at large and on defendant's track, and that, therefore, the injuries complained of were caused by the wrong and negligence of the plaintiffs, and not from a want of proper care and diligence on the part of the defendant. Issue was joined on the first and second

pleas, and a demurrer was interposed to the third, which was sustained by the court. The trial resulted in a verdict and judgment for the plaintiffs.

The plaintiffs, after showing ownership and the value of the mare and mule, introduced evidence tending to show that, on 4th November, 1881, the mule was killed by a locomotive attached to a train on defendant's road, going north-east, about three hundred and eighty-four yards south-west of Boligee, a regular depot or station on said road, at which station or depot a public road crossed said track; that "the whistling or signal post, at or near which the whistle for the station and road-crossing is usually blown," is about four hundred and ten yards further south-west from the station, thus making the signal post seven hundred and ninety-four yards south-west of said station; "that at the place where said mule was killed, there were on both sides of the railroad open lands used as a pasture, covered with ordinary swamp woods, which came down to defendant's right of way, on the north-west side of the track, about fifty feet from the iron rail of the track, but did not come down to it on the opposite side;" that the mare "was found about one-half mile from Boligee station, injured so as to render her useless; that she was blind in one eye, but could see a little out of the other; that she was seen on the track, which was straight, open and entirely unobstructed for more than a mile, in front of the passenger train of defendant, on November 26th, 1881, the distance not being definitely known; that the engine blew the stock alarm continuously from the time the train came in sight of a witness, who observed it from a point about four hundred yards from the railroad and from the mare; but the mare remained on the track shaking her head as if trying to ascertain from what direction the sound proceeded, until knocked off; and that the train slackened its speed from the time the whistle blew until it struck the mare, coming to a full stop shortly thereafter."

The evidence introduced on behalf of the defendant tended to show that the mule was killed after dark and after the engineer had given the usual whistle signals for Boligee station and the crossing thereat; that just prior to striking the mule, the ·brakes, which were the best in use, ·and of which the engineer had complete control, were applied in order to stop the train at the station; that from the time they were applied until the mule was struck, they were firmly held on; that at the time the brakes were applied the train was running at the rate of about twenty-seven miles per hour; that the engine was in charge of a competent and skillful man who had been a locomotive engineer for thirty years, and it had "a good head-light, which was lit and burning brightly" at the time of the

accident; that the position of the engineer was on the right hand side, and that of the fireman on the left hand side of the engine; that both were in their respective places, and on the watch for obstructions, etc., at the time of the accident; that "the first the engineer saw of said mule, it was trying to cross the track from the left hand side of the road; it was first seen directly in front of the engine, just as he struck it;" that an engineer, from his position on the engine, can not, on account of the boiler and smoke-stack, see the left-hand rail of the track for about fifty feet in front of the engine; that, with the aid of the head-light, an engineer can see the entire right of way of the railroad one hundred and fifty feet ahead of the engine, and onward until the range of light is passed; that "the light from the head-light does not cover the entire right of way back of one hundred and fifty feet ahead of the engine, but only part, beginning with the road-bed, and slanting gradually outward until it reaches the outside lines of the right of way," which is, at the place of accident, one hundred feet wide; that "in running a passenger train at its usual rate of speed, one can stop the train between one hundred and one hundred and fifty yards, by the use of the said brakes and appliances for such purpose, but that it can not be stopped within that distance by any known appliances in use;" that "the engineer was looking forward when said mule was struck, and could have seen it, had it been anywhere on the right of way beyond one hundred and fifty feet in front of the engine, or anywhere in the line of light cast by the head-light; but it was not seen, nor was the mule on the right of way at the time the engineer could have seen it, and he did not see any other mule;" that the first time the fireman saw the mule, "it was about twenty feet from the engine, coming in a run, and jumped on the track immediately in front of the engine;" that when he saw the mule, he had just got up from shoveling coal into the furnace of the engine; that "from the time the mule was perceived until the injury had been done, it was impossible to do any thing known to skillful engineers, to avert or prevent the injury;" and that it was the fireman's duty to ring the bell when approaching stations, but he did not remember ringing the bell before striking the mule, though he did ring it afterwards until the station was reached.

The evidence for the defendant further tended to show that "the said mare was killed about 26th November, 1881, by a passenger train coming north-east, between one-half and three-quarters of a mile south-west of Boligee station, in an open field; that said train was in charge of competent and skillful employees, and supplied with the best known appliances in use on such service; that the mare was first seen standing on the

track, about one hundred yards in front of the train, on a cold, frosty morning, about seven o'clock; that the engineer and fireman were in their usual positions, and on the look-out for obstructions; that the track was straight, and the mare would have been seen sooner, but the exceeding cold morning caused frost to continually form on the glass in front of the engine cab; that the engineer was continually wiping the glass in order to see ahead; that the fireman had also wiped the glass in front of him, on his side of the cab, but did not keep it well wiped, and he could not see through it well; that so soon as the whistle was blown, the fireman stuck his head out of the window, and kept it out, looking at said mare, until the engine struck her; that so soon as the mare was perceived, the usual cattle alarm was sounded, and the brakes were applied, and both continued until the mare was struck; that when the alarm was sounded, the mare did not move from the track, but only shook and moved her head from side to side, and remained standing on the track until she was struck and knocked therefrom; that the train stopped when the mare was about opposite the baggage car, the brakes were kept on, and held firmly down, and, when it was seen that the mare did not move from the track, the engine was reversed about twenty feet before the collision, but it was impossible to prevent the killing."

The foregoing being substantially all the evidence introduced on the trial, the court charged the jury, *ex mero motu,* "that if they found a verdict for the plaintiffs for both the mule and mare, they would ascertain the value of the property, and return a verdict for the same, with the interest thereon from the respective dates on which said property was injured to the present time." Defendant duly excepted to this charge, and also to the refusal of the court to give, at its written request, the following charges: 11. "If the jury believe the evidence in this cause, offered to them concerning the mare sued for, then it is their duty to find their verdict, so far as the mare is concerned, for the defendant." 12. "If the jury believe the evidence in this case in regard to the killing of said mule, then, in so far as said mule is concerned, their verdict must be for the defendant."

The rulings on the charges above noted are here, *inter alia,* assigned as error.

WOOD & WOOD, with whom were T. C. CLARK and J. P. McQUEEN, for appellant. (1) Charges 11 and 12, requested by the defendant, should have been given. The evidence discussed at length, and following authorities cited and commented on: *Alabama Great Southern R. R. Co. v. Jones,* 71 Ala. 487; *East Tenn., Va. & Ga. R. R. Co. v. Bayliss,* 74 Ala. 150.

[Alabama Great Southern Railroad Company v. McAlpine & Co.]

(2) The general charge of the court, allowing interest in the event of a recovery, was erroneous.—*Marshall v. Schricker*, 63 Mo. 308; *Gilpins v. Consequa, Peters C. C. R.* 88; *Jean v. Sandiford*, 39 Ala. 317; Sedg. on Meas. Dam. 377; *The Isaac Newton*, 1 Abb. Ad. R. 588; *Texas & P. R. Co. v. Ferguson*, 9 Am. & Eng. R. R. Cases, 396; *Fowler v. Davenport*, 21 Texas, 635; *Houston, etc., R. R. Co. v. Muldrow*, 54 Tex. 233.

J. P. HEAD, *contra*. (1) Charges 11 and 12 were properly refused. As to the mare, there is abundant evidence of negligence; and, as to the mule, the evidence is positive, and not even disputed, that the requirements of the statute, as to blowing the whistle, or ringing the bell, were not complied with; and besides, there was evidence of negligence. (2) The charge of the court on the measure of damages was correct. The mare and mule were both instantly killed, and the value, with interest thereon, is a fair and proper measure of damages.— *Borden v. Bradshaw*, 68 Ala. 362.

STONE, J.—The present suit is for negligently killing a horse and mule by appellant's trains. The killings were at different times, and are controlled by different testimony. While the killing was, in each case, shown by plaintiff's evidence with sufficient certainty to authorize the jury to find the fact of the killings, the circumstances attending them were shown alone by the witnesses for the defendant, railroad company. There was no material discrepancy in the testimony.

The rule governing the duty and liability of railroads is, that their employes must bestow on the service that degree of care and diligence which very careful and prudent persons give to thier own affairs of similar magnitude and delicacy. This is the extent.— *Grey v. Mobile Trade Company*, 55 Ala. 387; *Tanner v. L. & N. R. R. Co.*, 60 Ala. 621; *Ala. Gr. So. R. R. Co. v. McAlpine*, 71 Ala. 545. When injury has been shown to have been inflicted, the burden is then shifted on to the railroad company, to repel imputation of negligence, by proof sufficient to establish a *prima facie* case of such diligence. Section 1699 of the Code of 1876 has declared certain rules to be observed by railroad employes. These it is their duty to observe; and, in case of injury done by a train, which could be reasonably traced to a non-observance of these rules, it would then become the duty of the railroad company to prove that these rules had been complied with. But this principle only extends to such injuries as are caused by the non-observance of such rules. The railroad is not liable for every injury it may inflict. It is only liable for such damages as are

done to persons, stock, or other property, which result from a failure to comply with the requirements therein expressed, or from some other negligence on the part of such company or its agents.—Code, § 1700.  No matter how negligent the agents may be, if no one is injured thereby; no matter what injury may be suffered, if not caused or contributed to by the negligence of some agent in the control of the train, no liability is thereby fixed on the railroad company.—*M. & C. R. R. Co. v. Bibb*, 37 Ala. 699; *L. & N. R. R. Co. v. Williams*, 65 Ala. 74.

We have said that persons having the control of railroad trains in motion, must bestow that degree of care and diligence which very careful and prudent persons employ in their own private affairs of similar nature.  To illustrate this principle, let it be supposed the engineer is the owner of the railroad, with all its interests and responsibilities, and the stock imperiled is his own.  He is running on schedule time, must avoid collisions with other trains, must strive to make connections, and so maintain the accustomed speed of his train, that the reputation of his road for the transportation of passengers and freight be preserved.  He is supposed also to entertain a due regard for the safety of his cattle.  He will not be expected to stop his train upon every occasion of possible danger to his stock.  If he did so, he would derange the schedule, and miss his connections.  Neither will he be expected to run with unchecked speed throughout the whole line.  He has at his command appliances for checking the speed of his train, for stopping it altogether, and frightening stock from the track.  He is acquainted with the habits of cattle, and with the effect of the stock alarm upon them.  If the cattle be on the track, he will sound the alarm, and at the same time check the speed of his train, so that if the alarm prove ineffectual, he can halt his train and thus save his stock.  He would probably pursue this course, if the cattle were perceived a sufficient distance ahead, to give time for these several stages.  If, however, with a sufficient headlight, with good brakes in good working order, and without any negligence or inattention on the part of the engineer, the cattle, not being seen, or seeable before, spring suddenly on the track, or become visible on the track, in so close proximity to the engine, that any attempt to stop the engine in time, or otherwise to prevent the collision, must fail, then there is no want of care, even if no attempt be made to stop the engine.  The law does not require the impossible to be attempted. We mean, however, the impossible *in fact*.  The appliances must be resorted to, so long as there is a hope; and the *onus* is on the railroad, if sued, to show the utter fruitlessness of any attempt that might be made.  We are not attempting to

weaken or destroy the rule declared in *S. & N. R. R. Co. v. Jones*, 56 Ala. 507. That case hinged on the fact that the ox was seen in dangerous proximity to the road a sufficient distance ahead of the train to require the application of preventive measures.

In *Ala. Gr. So. R. R. Co. v. Jones*, 71 Ala. 487, we, to some extent, explained and modified the rule we had declared in *M. & C. R. R. Co. v. Lyon*, 62 Ala. 71. We desire now, if necessary, to make that explanation more emphatic. Speaking of the former case, we then said : "It was not intended to assert more than that it is the duty of railroad companies to employ the best machinery and appliances which are in use, and the failure to employ them, in view of the hazardous agencies they control, the dangers necessarily incidental, is a want of the care and diligence a man of ordinary prudence would observe. The omission to provide them is a violation of the duty enjoined by law, and if there be no more in the particular case than the omission and consequent injury, the court may, as matter of law, declare there is actionable negligence. The proposition must, however, be accepted with limitations and qualifications. From unknown causes, the machinery and appliances may, in the course of travel, become defective, or natural causes may intervene which render it inefficient. The train can not be expected to stop on the track. The stoppage may involve more of peril than its continued running, as the machinery will permit; and if, under such circumstances, reasonable care and diligence are observed, negligence could not be imputed. If it were true that from fog, or from driving rains or snow, the light cast from a proper headlight was obscured, the running of the train with reasonable [i. e. proper] care, in view of that circumstance, could not be deemed negligent." And, indorsing what is there said, we repeat, if the train had proper headlight and brakes in good order, if it was skillfully officered, was not running with undue speed, and if the officers and agents directing the movement of the train were attentive and vigilant, and guilty of no negligence, then, if by reason of the weather, or other unavoidable hindrance, the animal was not seen on the track until it was too late to save it by the use of the appliances belonging to the train, the railroad company is not liable for the loss.

There is a correlation to the high degree of care and diligence exacted of those employed in the control of the steam engine. We have seen they are required to give to the service that degree of diligence, which very careful and prudent persons bestow on their own affairs of like magnitude and delicacy. The corporation they serve should be held liable for their actual or imputed dereliction, to the same extent, and only to

[Benedict, Hall & Co. v. Renfro Bros.]

the same extent, as individuals would be held liable for the same conduct, under the same circumstances, and producing the same result. If jurors properly observe their sworn duty, they, in rendering their verdicts, will be governed alone by the testimony allowed to be given to them, and by the charge of the presiding judge. This is the sum and interpretation of their oath, and they have no discretion, save to weigh the testimony impartially, that they may arrive at the facts, and render a conscientious verdict. Any thing less than this, in any jury trial, is a palpable wrong, a mockery of justice, and a disgrace to the administration of the law. Natural persons and corporations, the richest and the poorest, the highest and the humblest, are alike equal before the law, have the same, and only the same rights, and are under the same, and only the same liabilities. There is no room or place in the jury-box for prejudice or partiality.

Under the rules declared above, charge twelve asked by defendant—the charge relating to the mule—should have been given. As we have said, there was no conflict in the testimony, and if believed it clearly disproved every semblance of negligence on the part of the railroad's employes, that could in the least have contributed to the death of the mule. It was one of those unforeseen misfortunes, which no diligence or forethought could guard against, according to all the testimony bearing on the question. We also think charge number eleven should have been given. The other charges asked we need not consider. The ruling on demurrer and the charge as to interest are free from error.—*Borden v. Bradshaw*, 68 Ala. 362; *Ala. Gr. So. R. R. Co. v. McAlpine*, 71 Ala. 545.

Reversed and remanded.