# Nashville, Chattanooga & St. Louis Railroad Company v. Hembree.

*Action for Damages against Railroad Company, for Killing Stock.*

1. *Statutory liability of railroad company, for injuries to live-stock; checking speed of train.*—The statutory duty imposed on the engineer of a railroad train, to check the speed of his train when approaching a public road crossing (Code, 1876, § 1699), only appiies to such crossings in a curve on a cut, where he can not see at least one-fourth of a mile ahead.

2. *Same; blowing whistle, or ringing bell.*—The duty of blowing the whistle, or ringing the bell, on approaching a depot or road-crossing, is imposed for the protection of persons or live-stock at the depot or crossing, and has no reference to stock running at large several hundred yards distant.

3. *Same; using brakes, reversing engine, &c.*—While it is the duty of a railroad engineer to keep a proper lookout, and to use all proper means known to skillful engineers, in order to prevent accidents to live-stock running at large, he is not required to attempt the impossible; and if, having kept a proper lookout, he did not and could not see the animals approaching the track, until it was too late to prevent the injury, he is not required to do anything, and his failure to sound the cattle-alarm, or to attempt to check the train, is not negligence.

[Nashville,.Chattanooga and St. Louis R. R. Co. v. Hembree.]

4. *Same; burden of proof; defenses to action.*—When the plaintiff shows that his horse was killed by a moving train belonging to the defendant railroad company, he makes out a *prima facie* case, and the *onus* is then cast on the defendant to show (1) that proper diligence was employed to prevent the injury, or (2) that it was caused by unavoidable accident, and could not have been prevented by proper care and diligence; and if either of these defenses is established by the evidence, the defendant is entitled to a verdict.

APPEAL from the Circuit Court of Jackson.

Tried before the Hon. JOHN B. TALLY.

This action was brought by A. J. Hembree, against the appellant corporation, to recover damages for killing a mare, the property of plaintiff. The circumstances attending the killing, as disclosed by the evidence on the trial, are stated in the opinion of the court. The court charged the jury, *ex mero motu*, as follows: "It is the duty of the engineer, or other person having control of the running of a locomotive, on approaching any public road-crossing, and within a quarter of a mile of such crossing, to blow the whistle, or ring the bell, and to continue to do so at short intervals until he has passed such crossing, and also to slacken the speed of the train; and a failure to do so is negligence on the part of such engineer; and if the jury find from the evidence that the·defendant's engine and cars were approaching a public road-crossing, and that the engineer failed · to blow · the whistle (or ring the bell) and slacken the speed, and that the plaintiff's mare was killed by reason of such failure, the defendant would be liable." "The statute imposes upon the engineer, or other person having control of the running of a locomotive, when approaching any public road-crossing, and within one-fourth of a mile of such crossing, to slacken the speed of the train, and to approach and pass such crossing at such speed as to prevent accidents in the event of an obstruction, and makes it negligence to fail so to slacken the speed of the train; and if the jury find from the evidence that, at the place where the mare was killed, the defendant's train was approaching a public road-crossing, and was within a quarter of a mile of such crossing, and that the speed of the train was not slackened, so as to prevent acidents in the event of an obstruction, and that the mare was killed because of such failure to slacken the speed of the train, then the defendant would be liable."

The court also gave the following charges, asked in writing. by the plaintiff: (1.) "If the jury are reasonably satisfied that plaintiff's mare was killed by defendant's train, at the

[Nashville, Chattanooga and St. Louis R. R. Co. v. Hembree.]

time alleged, then, unless defendant has reasonably satisfied them that its agents or servants in charge of the train did all in their power which they could reasonably do to avoid the killing, they must find for the plaintiff." (2.) "If the jury are reasonably satisfied that the defendant, by its agents or servants, was guilty of negligence in killing the mare, then they must find for the plaintiff."

The defendant excepted to each of these charges as given, and requested the court to instruct the jury, if they believed the evidence, that they must find for the defendant. The court refused this charge, and the defendant excepted.

The charges given, and the refusal of the charge asked, are now assigned as error.

HUMES, WALKER, SHEFFEY & GORDON, for appellant, cited *E. T., Va. & Ga. Railroad Co. v. Deaver*, 79 Ala. 216; *Railroad Co. v. Bayliss*, 74 Ala. 150; *M. & G. Railroad Co. v. Caldwell*, 83 Ala. 196; 2 Wood's Railway Law, 1327.

BROWN & KIRK, *contra.*

STONE, C. J.—The present action was brought for the recovery of damages, for the alleged negligent killing of a mare, by appellant's train. The testimony is without conflict on the following propositions: The killing took place in an open field, the ground being level, and neither curve nor cut in that part of the road. The train was approaching, and was within 175 or 200 yards of a flag-station, at which it made no stop, except when signalled, and it was not signalled on that occasion. There was a public road crossing ahead of the train, and within three or four hundred yards of the scene of the collision; and the train was running at the rate of twenty to thirty miles an hour, and neither stopped, nor was checking the speed of its train, as it approached the station.

Under the undisputed facts in this case, the Circuit Court erred in instructing the jury, that it was the duty of the railroads to check the speed of their trains when approaching a public crossing. That duty is simply statutory, and only applies to road-crossings in "a curve on a cut, where the engineer can not see at least one-fourth of a mile ahead." Code of 1876, § 1699; *E. T., Va. & Ga. R. R. Co. v. Deaver*, 79 Ala. 216; *Western Railway v. Sistrunk*, at present term, *ante*, p. 352.

The duty to blow the whistle, or ring the bell, when approaching a depot, public crossing, etc., is intended for the safety of persons, stock, etc., who may be at the depot, or who may chance to be crossing the track, as the case may be. It has no reference whatever to stock running at large, and not injured at the crossing. Proximity to the depot or crossing should exert no influence in the decision of a case like the present one.

The first charge given at the instance of plaintiff is erroneous. We have frequently said, the impossible need not be attempted.—*E. T., Va. & Ga. R. R. Co. v. Deaver,* 79 Ala. 216; *Ala. Gr. So. R. R. Co. v. McAlpine,* 80 Ala. 73; *M. & G. R. R. Co. v. Caldwell,* 83 Ala. 196. If the engineer was competent, and was keeping a proper lookout, and did not and could not see the approaching horses, until it was too late to give the cattle-alarm, or check the train in time to save the mare, the law did not require him to do any thing. Engineers are not required to do all in their power, nor to do anything, when it is manifest that nothing they can do, can possibly prevent the injury. The charge would have been correct, if it had contained this additional clause: "Unless the jury are reasonably convinced that there was no fault in not sooner discovering the mare, and that when discovered, no amount of diligence could have prevented the collision."

Charge two, given at the instance of plaintiff, is incorrect. Only such negligence as causes or contributes to the injury, is actionable.—*M. & G. R. R. Co. v. Caldwell,* 83 Ala. 196.

When the plaintiff showed that the mare was killed by defendant's moving train, if there had been no other proof, he was entitled to recover. In other words, the duty or burden was then cast on the railroad company of showing that it employed proper diligence to prevent the injury complained of, or that without fault or inattention on its part it failed to discover the peril until it became so imminent that no skill or diligence could avert the danger. Either of these is a perfect defense to an action brought for the injury. In the absence of such defense, fairly proved, it is the sworn duty of the jury to find for the plaintiff. But, when such exculpatory proof is made, and testified to in such manner as to command respect and confidence, it is equally the sworn duty of the jury to give to such testimony fair and unprejudiced consideration. If it reasona-

bly convinces their judgments of its truth, they cannot inno-
cently disregard it.—*Ala. Gr. So. R. R. Co. v. McAlpine,*
75 Ala. 113.

Railroads are prized for the rapidity with which they
transport persons and things. Speed is, possibly, their
highest excellence. Much legislation has been enacted for
the regulation of this relatively new species of common car-
rier, but, with the exception of specified places, no restraint
has been imposed on their rate of speed. This has been
left to their own arbitrament. Hence it can not be affirmed
that, outside of prohibited places, there is any restriction in
the velocity of its movements. Still, locomotives, with the
trains they draw, are "powerful for mischief, as well as for
good." For this reason we have held, "that only very care-
ful and prudent men should be placed in charge of such ve-
hicles of transportation, and they should employ their care
and prudence actively, as such men watch over their own
important interests and enterprises, of similar magnitude
and delicacy."—*Grey v. Mobile Trade Co.,* 55 Ala. 387;
*Tanner v. L. & N. R. R. Co.,* 60 Ala. 621; *Tyson v. S. &
N. R. R. Co.,* 61 Ala. 554. And the appointees must be
skilled, as well as prudent and diligent.

On the other hand, if the officer in control of the train is
skilled in his profession, is watchful, and a dumb animal
comes on the track in front of, and in such proximity to the
train, as that the latter can not be stopped in time to save
the animal, then the engineer need do nothing; for he need
not attempt the impossible. In such case, the railroad
company is not liable, unless with proper watchfulness, con-
sidered in connection with his other duties, the engineer
could have discovered the approaching animal in time to
frighten it away with the cattle-alarm, or stop or check the
train, so as to prevent the collision. It is not every injury
a train may inflict that fastens a liability on the railroad
company. If a law were so to declare, it would be uncon-
stitutional.—*Zeigler v. S. & N. R. R. Co.,* 58 Ala. 594.
And juries, under their oaths, can not establish a rule for
their government, and act on it, which, if declared by the
legislature, would be adjudged unconstitutonal. The true
and only rule, sanctioned alike by law and by conscience, is
to hold the railroad company liable, whenever the injury is
the result of negligence, or want of skill in its officials, un-
der the rules laid down above. This is right in itself, and
stands on the same footing as any injury suffered through

the unskillfulness or negligence of another, save in the single matter of the burden of proof. But, when the injury is not the result of negligence or unskillfulness, but, under the rules above, is unavoidable, then the railroad company is not liable; and to hold it so, is a gross impropriety, and a great wrong.—*Ala. Gr. So. R. R. Co. v. McAlpine,* 75 Ala. 113.

There is no substantial conflict in the evidence, tending to prove the circumstances under which the mare was killed. If believed, the railroad company was not liable. The general charge asked by defendant ought to have been given. *E. T., Va. & Ga. R. R. Co. v. Bayliss,* 74 Ala. 150.

Reversed and remanded.