ST. LOUIS & SAN FRANCISCO RAILROAD CO. *v.* MRS. IDA MOORE ET AL.

[58 South. 471.]

1. APPEAL AND ERROR. *Harmless error. Instructions. Conflicting evidence. Verdict. Railroads. Operation. Injuries to persons on track. Rate of speed. Definition of terms. Death. Elements of compensation. Code 1906, Sec. 721.*

Where instructions were too liberal for defendant, he cannot complain.

2. FINDING OF FACTS. *Conflicting evidence. Verdict of jury.*

Where the evidence is conflicting and the issue was fairly submitted to the jury under proper instructions, their finding is conclusive on appeal.

3. RAILROADS. *Operation. Injuries to persons on track. Rate of speed.*

It is negligence in a railroad company to run its trains in the nighttime at such a speed that it is impossible, by the use of ordinary means and appliances, to stop the train within the distance in which obstructions upon the track can be seen by the

aid of the headlight of the engine, and if anything in surrounding conditions and circumstances suggest an increase of care in the operation of a railroad train to avoid peril and damage, the duty to increase such care proportionately increases, and this rule applies to the country and sparsely settled sections as well as to cities where there is a speed limit by law.

**4. SAME.**

To run a railroad train at night propelled by the powerful agency of steam or electricity through an incorporated city or town and in violation of the statute at such a rate of speed as to make it impossible, by the exercise of ordinary care, to stop the train within the distance shown by the glare of the headlight of the engine, is such reckless conduct amounting to wilfulness as will justify the imposition of punitive damages in favor of one struck on its tracks and injured thereby.

**5. RAILROADS.** *Instructions. Harmless error.*

In an action for damages for the death of a party struck by a train, an instruction that the jury might consider the pain and suffering of the deceased as "shown by the record" up to the time of his death, and there was no evidence from which the jury could infer that such death was other than instantaneous, the giving of such instruction was harmless, where from the entire record and the amount of the verdict it can be seen to have had no prejudicial effect.

**6. INSTRUCTIONS.** *Punitive damages. Definition.*

It is not necessary that the jury should be instructed as to what constitutes punitive damages; it is presumed that the jury understands what is meant by punitive damages as much as they understand what is meant by actual or compensatory damages.

**7. SAME.**

An instruction to the jury as to their right to inflict punitive damages is not improper for failure to define what "punitive" damages are, in the absence of a request for such a definition.

**8. DEATH.** *Actions for causing. Damages. Elements of compensation. Loss of society. Code 1906, Sec. 721.*

In a suit under Code 1906, Sec. 721, by a widow and children for the death of a husband and parent, the jury may take into consideration the loss to the wife and children of the companionship, protection and society of the husband and father but not by way of solatium.

101 Miss. 49

Appeal from the circuit court of Lee county.

Hon. J. H. Mitchell, Judge.

Suit by Mrs. Ida Moore and others against the St. Louis & San Francisco Railroad Company. From a judgment for plaintiff, defendant appeals.

The facts are fully stated in the opinion of the court.

*J. W. Buckanan* and *E. O. Sykes,* for appellant.

*Clayton, Mitchell & Clayton,* for appellees.

No brief of counsel on either side found in the record.

McLean, J., delivered the opinion of the court.

The appellees, who are the widow and children of one L. D. Moore, brought suit against the appellant, alleging that their husband and father was killed by the defendant, through the willful, wanton, and gross negligence of the employees of the defendant, and that the killing occurred within the limits of the incorporated city or town of Nettleton. The suit was for fifteen thousand dollars, and the jury returned a verdict for four thousand, five hundred dollars. The evidence discloses the following facts:

Mr. Moore was killed within the corporate limits of the town of Nettleton, at about twelve o'clock midnight. The deceased had been to Memphis, and had returned that night on the train to Nettleton, and had been drinking to some extent, and was perhaps under the influence of liquor. The train which killed him was not the train on which he returned to Nettleton. Just before his death, he was seen by the engineer and fireman in charge of the train that ran over him, sitting between the rails of the railroad track, and was within less than two hundred yards of the regular passenger depot at Nettleton, and between the depot and the switch to the west of the depot. The train that killed him was going east, and was running, according to the testimony of the engineer and

fireman in charge of the train, from thirty to thirty-five.
miles an hour.  The engineer testified that he was on the
lookout; that the track was perfectly straight for a dis-
tance of from a half mile to a mile west of the point
where decedent was killed; that, when he first discovered
the man on the track, the engine was about two hundred
feet from him; that the night was dark and foggy, and
that it was impossible for him to have stopped his train
running at that rate of speed within the distance shown
by the glare from the headlight of the engine.  The head-
light was burning brightly, and ordinarily he could see
an object on the track for a distance of from two hun-
dred to three hundred yards; that the reason why he did
not discover the man on the track that night was because
it was dark and foggy, and the fog prevented him from
seeing the man.

For the plaintiff the court instructed the jury that,
even though they may believe from the testimony that
the deceased was guilty of contributory negligence and
was a trespasser, notwithstanding if they believe from
the evidence that the injury was willfully, wantonly, or
recklessly inflicted, the jury should find for the plaintiff.
The second instruction related alone to damages.  The
third instruction related to the form of the verdict.  The
fourth instruction told the jury that although they may
believe from the testimony that the deceased, at the time
of the injury, was guilty of contributory negligence, yet
if they further believe from the evidence that the de-
ceased was in a position of peril, and the engineer saw
his position of peril and appreciated his danger; and
that the deceased could not by the exercise of reasonable
effort extricate himself from such position in time to
have avoided the injury, and that the engineer saw the
deceased in such position in time to have avoided the
injury by the exercise of reasonable care, and that after-
wards said engineer willfully, wantonly, or recklessly
ran the train upon the deceased and inflicted the inju-

ries complained of, then they should find for the plaintiff.

For the defendant only one instruction was refused, which was a peremptory instruction to find for the defendant. Instruction No. 1 for the defendant charged that if the jury believed from the testimony that the engineer, as soon as he discovered the deceased on the track, did what he could to stop the train by applying his air brakes in emergency and sanding his track and also sounding the alarm, then the jury should find for the defendant. By the second instruction for the defendant the jury was charged that if the evidence in the case showed that the deceased was guilty of contributory negligence which was the proximate cause of his death, and unless the jury believed from a preponderance of the testimony in the case that the engineer saw the deceased on the track and appreciated his peril at a sufficient distance from the deceased for the engineer to have stopped his train before striking the deceased, and that unless the engineer willfully, wantonly, and recklessly failed to stop the train, then the verdict should be for the defendant. These were all of the instructions that were given for either the plaintiff or the defendant, except instructions as to the form of the verdict, and except as to the elements of damage. The instructions were too liberal for the defendant, but of this defendant cannot complain.

It is manifest from these instructions that the only question that was submitted to the jury as to the liability of the defendant was whether the injury was inflicted through the willful, wanton, or reckless conduct upon the part of the defendant. The evidence in the case is conflicting as to when and from what point the engineer discovered, or could have discovered, the perilous position of the deceased, and as to the character of the night; the testimony for the plaintiff supporting the contention that the night was clear, and that there

was nothing to prevent the engineer from seeing the perilous position of the plaintiff at such a point as he could, by the exercise of proper care, have avoided the injury. The testimony on the part of the defendant is to the effect that the night was dark and foggy; but, as the jury has passed upon the question of fact, this court has no power to disturb the verdict.

The ground upon which the defendant based its peremptory instruction is that the night was so dark and foggy it was impossible for the train to be stopped within the distance shown by the glare of the headlight. It may be said that, if the evidence of the defendant is true upon this proposition, it fastens liability upon the defendant. The law is well settled that it is negligence in a railroad company to run its train in the nighttime at such a speed that it is impossible, by the use of ordinary means and appliances, to stop the train within the distance in which obstructions upon the track can be seen by the aid of the headlight of the engine, and that, if anything in surrounding conditions and circumstances suggests an increase of care in the operation of a railroad train to avoid peril and damage, the duty to increase such care proportionately increases. Such is in accordance with the great weight of authority and with the better reason. *Central R. R. Co.* v. *Ingram,* 98 Ala. 395, 12 South. 801; *Memphis R. R. Co.* v. *Lyon,* 62 Ala. 71; *Alabama R. R. Co.* v. *Jones,* 71 Ala. 487; *Louisville R. R. Co.* v. *Gentry,* 103 Ala. 635, 16 South. 9; *L. & N. R. Co.* v. *Davis,* 103 Ala. 661, 16 South. 10; *L. & N. R. Co.* v. *Cockran,* 105 Ala. 354, 16 South. 797; *Alabama Midland Ry. Co.* v. *McGill,* 121 Ala. 230, 25 South. 731, 77 Am. St. Rep. 52. In *C., N. O. & T. P. R. Co.* v. *Commonwealth of Kentucky,* 126 Ky. 712, 104 S. W. 771, 17 L. R. A. (N. S.) 561, it is held, affirming the rule in *L., C. & L. R. R. Co.* v. *Commonwealth of Kentucky,* 80 Ky. 143, 44 Am. Rep. 468, that it is an indictable offense as a common-law nuisance for a railroad, at a crossing of

the turnpike, to habitually run its trains at an unsafe and unreasonable rate of speed, and so rapidly as to endanger and injure persons traveling upon a turnpike, without giving warning signals and taking precautions to avoid injuring persons by approaching trains.

All of the authorities above cited are where the train was running in the country through a sparsely settled section, and where no speed limit by law was placed upon a railroad. To run at night a railroad train propelled by the powerful and dangerous agency of steam or electricity through an incorporated city or town, and in violation of the statute, at such a rate as to make it impossible, by the exercise of ordinary care, to stop the train within the distance shown by the glare of the headlight of the engine, must, from the necessities of the case, be regarded and looked upon as reckless conduct. The common law, as contradistinguished from statutory law, is nothing more or less than common sense honestly applied to the practical affairs of life; and it is manifest that to run a train of cars, propelled as aforesaid, at such a dangerous rate of speed, through a populous section of the country, is dangerous in the extreme, well calculated to produce injury, not only to persons on the track, but to the passengers on the train, and may well be characterized as reckless conduct, and such as the law denominates willfulness. In *Stevens* v. *Railroad Co.*, 81 Miss. 195, 32 South. 311, this court held that it was gross negligence to run a train in the daytime, through a populous portion of a city or town, at a dangerous rate of speed. If this be true, it is even more reckless to run a train at night through an incorporated city or town, and within the yards, at such a rate that it cannot be stopped within the distance shown by the glare of the headlight.

Instruction No. 2, given for the plaintiff, is criticised by appellant upon the following grounds: First, that it instructed the jury that they might consider the pain suffered by the deceased up to the time of his death; sec-

ond, that the instruction told the jury that they might return a verdict for punitive damages, in addition to the compensatory damages, but failed to instruct the jury what punitive damages are.

In answer tothe first proposition: Granting that in the instant case death was instantaneous, and that intestate sustained no pain either mental or physical, it is no ground for reversing, because if it be conceded that there was no evidence from which the jury could infer pain, it must be presumed that the jury in its verdict did not include anything for the pain and suffering. The instruction reads: "The mental and physical suffering which he endured, if any be shown by the record." If it be error, it is therefore harmless; and looking through the entire record, and taking into consideration of the amount of the verdict, we cannot say that the instruction is reversible error. The verdict was evidently right on the facts.

As to the second proposition, it is not at all necessary that the jury should be instructed as to what constitutes punitive damages. As this court has held, it is proper to do so; but it is to be presumed that a jury understands what is meant by punitive damages, as much so as they understand what is meant by actual or compensatory damages; and if the defendant in this case had desired, the court would have given it an instruction defining what is meant by punitive or exemplary damages.

The only portion of the instruction which has given us any difficulty, although the appellant does not complain of that portion of the instruction, is that which says that, in fixing the amount of the damages, "you may take into consideration the loss to the wife and the children of the deceased of the companionship of the husband and the father." According to the great weight of authority, both in England and in America, loss to the wife and children of the society and companionship of the husband and father is not an element of damage;

but it is to be observed that all of these authorities are predicated upon a statute entirely different from the statute under consideration. Sec. 721 of the Code of 1906 provides, in actions for injuries producing death, that "in such action the party or parties suing shall recover such damages as the jury may, taking into consideration all damages of every kind to the decedent and all damages of every kind to any and all parties interested in the suit." It is to be observed that there is a very marked distinction between this statute and the former statutes in this state; and it is to be furter observed that the law, in the progress of human events, has more and more, as the years succeed each other, become more liberal in allowing damages for the death of a party.

At common law an action for damages did not survive the death of the party injured. An action for the recovery of damages for the wrongful killing of a human being was the result of the statute of 9 & 10 Vict., passed in 1846, and known as "Lord Campbell's Act." By that law it is provided that "the jury may give such damages as they may think proportioned to the injury resulting from such death to the parties respectively, for whose benefit such action shall be brought." Though varying considerably in their provisions, statutes of practically the same import have been enacted in most of the states of the American Union. Under Lord Campbell's act, and also under the statutes of almost all the states in this country, including the former statute of this state, it is a well-settled proposition that the jury, in estimating damages, are confined to the pecuniary loss sustained by the surviving husband, wife, parent, child, or other kindred of the deceased, and cannot take into consideration their mental suffering, nor is the jury authorized to give damages by way of the solatium. This was the rule of this state prior to the enactment of the law of 1898, which is brought forward in the Code of 1906, and is the statute now under consideration.

In order to determine the question, we may well look
to the decisions of other courts construing statutes sim-
ilar to the one now under consideration.  The Califor-
nia statute (Code Civ. Proc., section 377) provided that
"such damages may be given as, under all the circum-
stances of the case, may be just."  The California court,
in construing this statute, has repeatedly held that dam-
ages may be given for the mental anguish of the sur-
viving wife, child, etc., as well as for the loss of society,
and that the jury are not limited in assessing damages
to the actual pecuniary loss of the plaintiff.  In *Beeson*
v. *Green M. G. M. Co.,* 57 Cal. 20,, it was said:  "We
think that the associations and domestic relations of
the parties, their kindly demeanor towards each other,
the society, were parts of 'all the circumstances of the
case,' for the jury to take into consideration in esti-
mating what damage would be just from a pecuniary
point of view, especially as there is nothing in the case
to show that the jury were instructed that they might
give damages by way of solace."  The same was held
in *Cook* v. *Clay Street Hill R. R. Co.,* 60 Cal. 604; also
in *Myers* v. *San Francisco,* 42 Cal. 215; *McKeever* v.
*Market Street R. R. Co.,* 59 Cal. 294; *Nehrbas* v. *Cen-
tral Pacific R. R. Co.,* 62 Cal. 320; *Cleary* v. *City R. R.
Co.,* 76 Cal. 240, 18 Pac. 269.  In this latter case the chief
justice said:  "The mental anguish and suffering of the
parents, in addition to the medical attendance and fun-
eral expense, are elements which under our peculiar
statute are proper to be considered in determining the
amount of the recovery."  In the subsequent case of
*Munro* v. *Pacific Coast Dredging & Reclamation Co.,* 84
Cal. 515, 24 Pac. 303, 18 Am. St. Rep. 248, the court says:
"We are of opinion that the court erred in including in
the instruction the words 'sorrow, grief, and mental
suffering occasioned by the death of the son to his
mother.'  In thus directing the jury that the court fell
into an error.  In our opinion the damages should be

confined to the pecuniary loss suffered by the mother, and the loss of the comfort, society, support, and protection of deceased.'' The latest utterance of the California court is *Green* v. *S. C. R. R. Co.*, 67 Pac. 4, which was a suit by the husband and child for the death of the wife and mother, in which it was held that: ''As damages, all pecuniary loss suffered by them from loss of society,'' etc. (In this connection we call attention to the fact that in 13 Cyc. it is stated that: ''In an action by a husband or wife for the death of his or her spouse, damages cannot be recovered for the loss of the society of the deceased;'' and among other authorities refers to *Munro* v. *Pacific Coast Dredging Co.*, 84 Cal. 515, 24 Pac. 303, 18 Am. St. Rep. 248; *Beeson* v. *Green Mountain Gold Mining Co.*, 57 Cal. 20. These authorities hold to the contrary, as we have shown above.)

The Virginia statute (Code 1873, ch. 145, section 8) provides that ''the jury in any such action may award such damages as to it may seem fair and just.'' In construing this statute the court held, in *Matthews* v. *Warner*, 70 Va. 570, 26 Am. Rep. 396, and *Baltimore R. Co.* v. *Noell*, 73 Va. 394, that ''the jury were not confined to mere pecuniary damages, but may award such damages as it may deem to be fair and just under all the circumstances of the case.'' The South Carolina statute is that ''the jury may give such damages as they may think proportioned to the injury resulting.'' In *Petrie* v. *Columbia R. Co.*, 29 S. C. 303, 7 S. E. 515, it was held that under this statute it was not necessary for the plaintiffs, the children of the deceased, to prove that they had been pecuniarily damaged, or that they had any legal claim on the deceased for their support. In *Patterson* v. *Wallace*, 1 Macq. 748 (Scotland), damages are are allowed by way of solatium. In *Matthews* v. *Warner, supra*, the court, in discussing this question, says: ''It was argued very earnestly by the learned counsel for the appellant that such a construction of the statute

as we have here given would result in great injustice, if juries are to be turned loose to assess damages according to their own notions as to compensation for the mental suffering and agony of a mother losing her child, or of a wife losing her husband, unrestrained by statutory enactment, confining them to the pecuniary injury resulting in death. . There are two answers to such arguments. One is: *'Ita est scripta lex.'* The other is: We must presume the legislature knew the force and effect of their enactments. They must have been cognizant of the statutes and the decisions under them, and they must with such knowledge have known the force and effect of such language used.'' The Virginia statute, which was being considered by the court, was that ''the jury in any such action may award such damages as to it may seem fair and just,'' and the instruction complained of simply followed the statute.

In *St. Louis & N. A. R. Co.* v. *Mathis,* 76 Ark. 184, 91 S. W. 763, 113 Am. St. Rep. 85, it was held that, in an action by minor children for the death of their father, the industry, commercial character, and parental care and affection of the deceased may be taken into consideration in estimating the damages. In *St. Louis, Iron Mountain & Southern Ry. Co.* v. *Haist,* 71 Ark. 258, 72 S. W. 893, 100 Am. St. Rep. 65, it was held that a minor, in a suit for the death of her father, is entitled to recover for the care, support, and maintenance, and such advantages and benefits in the way of training and education, both morally and intellectually, as she would have received from him if his death had not occurred.

By far the best-considered case upon this subject to be found in all the books is *Florida R. R. Co.* v. *Foxworth,* 41 Fla. 1, 25 South. 338, 79 Am. St. Rep. 149. The Florida statute (Laws 1883, ch. 3439) provides that the jury may give such damages ''as the party entitled to sue may have sustained by reason of the death of

the party killed." After a very exhaustive and thorough investigation of the subject, the conclusion reached by the Florida court is as follows: "In estimating the pecuniary loss sustained by the widow, the jury may properly take into consideration her loss of the comfort, protection, and society of the husband, in the light of all the evidence in the case relating to the character, habits, and conduct of the husband, and to the marital relations between the parties at the time of and prior to his death; and they may also consider his services in assisting in the care of the family, if any, but the widow is not entitled to recover for her mental anxiety or distress over the death of her husband," etc.

In determning what damages are recovered in actions like the one under consideration. we must look alone to the statute. This is the measure and the limit of the right; and after a full consideration of the question our conclusion is that, in a suit by a widow and children for the death of the husband and parent, the jury may take into consideration the loss to the wife and children of the companionship, protection, and society of the husband and father, but not by way of solatium. In *Telephone Co.* v. *Anderson*, 89 Miss. 732, 41 South. 263, the exact question now under consideration was not discussed, though the present statute was under review by the court.      *Affirmed.*