## YAZOO & MISSISSIPPI VALLEY RAILROAD COMPANY *v.* FRAZIER.

[61 South. 547.]

RAILROADS.  *Killing stock.   Negligence.   Evidence.*

> Where in a suit against a railroad company for killing an animal upon the track, the uncontradicted testimony showed that the animal jumped on the track between thirty and forty feet ahead of the engine and ran one hundred and thirty feet down the track and that it was impossible to stop the train before striking the animal, the train, being properly equipped with all necessary appliances in good order, and the engineer on the look out, there was no negligence on the part of the railroad shown and the court should have been given a peremptory instruction for the defendant.

APPEAL from the circuit court of Holmes county.

HON. E. V. HUGHSTON, Special Judge.

Suit by J. E. Frazier against the Yazoo & Mississippi Valley Railroad Company.   From a judgment for plaintiff, defendant appeals.

The facts are fully stated in the opinion of the court.

*Mayes & Longstreet,* for appellant.

The first reversible error committed by the trial court was the failure of the court to grant the peremptory instruction in favor of the defendant.

When, in an action against a railroad company for killing stock on the track, plaintiff's case rests solely on the statutory presumption of negligence, arising on mere proof of accident, and the testimony of defendant's engineer conclusively shows that the acicdent was unavoidable, and it appears that this testimony of the engineer is neither disputed nor unreasonable in itself, the railroad company is entitled to a peremptory instruction in its favor.   75 Miss. 360; 59 Miss. 280; 66 Miss. 3; 67 Miss. 15; 68 Miss. 359; 70 Miss. 348; 74 Miss. 513; 7 So. 321; 9 So. 828; 35 So. 137; 37 So. 498; 39 So. 478.

In the case at bar, the appellee bases his case solely on the statutory presumption of negligence, arising from mere proof of the accident.

The only witness examined on behalf of appellee was the appellee himself, who testified that on the morning of December 9, 1910, he found his mule lying on appellant's right of way, dead, with its back touching the end of the crossties, and with cuts on its hips and with blood in its nostrils; that he examined the railroad track and found mule tracks between the rails, extending for a distance of thirty yards. Further than this, the appellee does not attempt to recount any of the circumstances of the killing.

The engineer then took the stand, as a witness for appellant, and testified that the mule was killed at about eight o'clock at night; that at the time of the accident he was riding in his proper place on the engine, and on the lookout for danger. That this engine was pulling a baggage car, and two passenger coaches and was running about twenty miles an hour when the mule was first seen; that the engine and train were first-class in every respect, and were equipped througout with air brakes and all other safety appliances; that the air brakes and all other appliances were in good condition, and in good working order, and that they worked properly on this occasion; that at the place where this accident occurred, the railroad tracks run through a deep cut; that when he first saw the mule, it was in the act of jumping out onto the track from behind one of the banks of this cut, and about forty feet ahead of the engine; that immediately upon seeing the mule, he did everything that could be done to prevent the accident; he applied the air brakes and blew the whistle three or four times; that that was all that could be done; that after the mule jumped onto the track, it got over to the left-hand side of the tracks, out of his range of vision and he did not see the mule when the blow was struck; that immediately, upon applying the air brakes, the train began to reduce its speed, but that it could not

be stopped within less than three hundred feet. This testimony of the engineer is most reasonable, and is not contradicted by the testimony of appellee in a single particular.

The testimony of appellee corroborates the engineer's testimony in a measure, for appellee also testifies that the accident occurred at the cut, and it is appellee's own testimony which furnishes us the information that the north bank of the cut is ten feet high, and the south bank six feet high; that one of the banks is perpendicular, and the other almost perpendicular.

This case is, therefore, brought within the well-understood and firmly established rule which is laid down by this court in the cases cited above, and the peremptory charge should have been granted to the railroad company, since this action was shown to be clearly unavoidable. Because of the failure of the trial court to grant the peremptory instruction in favor of the appellant, this case should be reversed and remanded.

*H. H. Elmore* for appellee.

The conflict as to the grade of the track is a conflict about a material fact. The mule was forty feet ahead of the engine when first seen and ran ninety feet before being overtaken. The mule was running ninety feet while the train was running one hundred thirty feet. The train by the testimony of the engineer was running twenty miles an hour. The mule was clipping along at about fourteen miles an hour; therefore it will be seen then that with a little more than twenty-five per cent. reduction of the speed, the train could not have caught the mule and surely with that reduction, and the mule going that gait, it could have kept clear of the train long enough for the engineer to stop the train. The plaintiff made out a case of a mule being killed by a train going "up grade." The defendant defended on a case of a mule being killed by a train going "down grade." When the question arises as

to ability to reduce the speed of a moving body over a surface, the fact of the grade is a big fact. Plaintiff had no means of showing what efforts were made by the engineer to stop the train but his land adjoins the railroad where the killing occurred and he could testify as to the grade. The testimony of the plaintiff was accepted by the jury. The defendant should have shown that with this short, light train, it could not have been stopped going "up grade" within one hundred and thirty feet. The defendant should have gone further and should have shown that the speed of the train could not have been reduced going "up grade" to less than fourteen miles an hour. Had it been so reduced it would not have caught the mule where it did. The defendant did not show within what distance this train could have been stopped or slackened while going "up grade."

In *R. R. Co.* v. *Greaves,* 75 Miss. 360, there was but one fact in dispute in the case and that was as to the grade of the track. The case was reversed because of erroneous instructions; because, "with this incorrect charge before it, the jury must have felt constrained to find against the railroad," and because, "we fear this charge so far misled the jury as that the evidence was disregarded." In that case a passenger train was running fifty miles an hour when the horses were seen about one hundred and fifty feet in front of the engine and "everything was done that could have been done" to stop. The case was not reversed because the plaintiff was not entitled to go to the jury.

In the *Packwood case,* 59 Miss. 283: "There was nothing improbable in the story told by the witnesses for the defendant nor was there anything at all inconsistent with it in any fact proved in the case on either side. There was (is) nothing in the record to suggest that the witnesses were unworthy of credit or that the jury in fact disbelieved them."

In such cases as this to entitle the defendant to a peremptory instruction there should be "nothing to suggest a doubt of the accuracy of the testimony of the engineer that he could not have so slackened his speed that the mule could have escaped. *R. R. Co.* v. *Gunn,* 68 Miss. 366.

The engineer does not explain why he did not shut off steam. This could have been done in the twinkling of an eye and to ordinary mind would seem to have been the proper thing to do. It is very doubtful if the engineer sounded the whistle at all. If it took him as long to sound it as it took defendant's attorney to make the witness whistle, the engineer was at best a slow operator. The train was being negligently run. That is certain even on defendant's own showing; for the headlight threw light for only seventy-five yards. The engineer said he must have three hundred feet to stop going "down grade" as he was.

"It is negligence in a railroad company to run its train in the nighttime at such a speed that it is impossible by the use of ordinary means and appliances to stop the train within the distance in which obstruction upon the track can be seen by the aid of the headlight of the engine." *R. R. Co.* v. *Moore,* 58 So. (Miss.) 473.

If the train had been running in accordance with the above rule, it is altogether probable that the mule would have escaped, keeping in mind that he was making time at the rate of fourteen miles an hour.

As to this branch of the case, the plaintiff was undoubtedly entitled to go to the jury, because of the conflict in the testimony as to the grade, which challenged the accuracy and truthfulness of the testimony of the engineer; because in addition, of the doubtful character of his testimony as to what he really did do; because he failed to shut off steam; and because he was running the train negligently in that he could not stop with the light from the headlight.

REED, J., delivered the opinion of the court.

J. E. Frazier brought suit against the Yazoo & Mississippi Valley Railroad Company to recover the value of a mule killed by a locomotive on the company's railroad line, and obtained judgment for the full amount claimed, one hundred and seventy-five dollars. Mr. Frazier made out his *prima facie* case by showing that the mule was killed by the running of the railroad company's locomotive. The railroad company then showed by the testimony of the engineer that at the time the mule was struck the engine was pulling a baggage car and two passenger coaches, and was running at the rate of about twenty miles an hour; that the engineer was in his proper place on the engine, and on the lookout; that the train was properly equipped with all necessary appliances, and was in good working order; that the mule jumped on the track from behind a bank at the end of a cut, between thirty and forty feet ahead of the engine; that immediately upon seeing the mule the engineer applied the air brakes, blew the whistle, and did all that could be done to stop the train and prevent the mule being struck; and that the mule was overtaken by the engine after running ninety feet. It is also shown that the headlight only threw a light for seventy-five yards, and that in going downgrade three hundred feet were required within which to stop the train. The only conflict suggested in the case is that the plaintiff, Mr. Frazier, testified "the train was running up grade when it struck the mule."

Appellant assigns as error the refusal of the trial court to grant a peremptory instruction to find for defendant. The question before us is: Did the killing of the mule result from the negligence of the railroad company, or was it an unavoidable accident? There is no real conflict in the testimony in this case. The difference in the testimony relative to the train going up grade or down grade at the time is not material. The uncontradicted testimony shows that the mule jumped on the track only a

short distance, between thirty and forty feet, ahead of the engine, and it is apparent that, no matter whether the train was going down grade or up grade, it was impossible to stop the train within the short distance traveled on the track by the mule. At the outside, this distance was only one hundred and thirty feet. It is proved that the engineer immediately applied the brakes and did all he could to stop the train. There is no testimony in this case to show that there was a want of reasonable skill and care on the part of the engineer, or any other person connected with the company's train, at the time the mule was killed. On the other hand, it is shown that the train was properly equipped with all necessary appliances for its safe operation, that the engineer was on the lookout and saw the mule as soon as it reached the track, that he promptly used all the means in his power to avoid striking the mule, and that there was no carelessness or negligence on his part.

It seems to us that the killing of the mule was clearly unavoidable. The present case is very similar to that of *Railroad Company* v. *Greaves*, 75 Miss. 360, 22 South. 804. In that case it was shown by the testimony of the engineer, in order to meet the *prima facie* case made by plaintiff, that all the appliances of the train were in proper order, and that it was running at the rate of fifty miles an hour, at night, down a slight grade, when the horses which were killed were seen, about one hundred and fifty feet in front of the engine; that everything which could have been done was done by the servants of the company to prevent the injury. Evidence was also introduced in that case to show that the train was running on an up grade rather than a down grade track at the time of the accident, but this apparent conflict was considered immaterial. The judgment of the court in favor of plaintiff was reversed. Chief Justice Woods, who delivered the opinion of the court, in deciding that a certain instruction stating that it was the duty of the agents of the com-

pany to drive animals off the track when they were found thereon, should not have been given, said: ''The third instruction for the plaintiff was inapplicable to the developed facts of the case, and was erroneous. Under the circumstances attendant upon the killing of the horses, as shown by the evidence, it was not the duty of the agents of the company to drive the animals from the track—a feat palpably impossible of accomplishment. In proper cases, where the facts proven show that the danger was seen in time to have avoided doing injury, if reasonable skill and care had been exercised by the railroad's servants operating and controlling the train, the charge would be correct; but it was wholly erroneous, and doubtless misleading to the jury, in this case, where the uncontroverted evidence is that the train was running about fifty miles an hour, on a dark night, and the animals only seen about one hundred and fifty feet in front of the locomotive by the engineer, who was on his seat and on the lookout for obstructions on the track.''

Counsel for appellee contends that the train was being negligently run, because the headlight only threw a light for seventy-five yards, and that it required three hundred feet within which to stop the train, and cites to sustain his contention the case of *St. Louis & S. F. R. R. Co.* v. *Moore,* 58 South. 472, 39 L. R. A. (N. S.) 978. We do not think the rule stated in that case, to the effect that the inabiilty to stop a train by the use of ordinary means and appliances, within the distance in which an obstruction on the track can be seen by the aid of the headlight, amounts to negligence, will apply in this case. It will be noted that in the Moore case the train was running within the limits of an incorporated town when the accident occurred. In the case of *Nixon* v. *Illinois Central R. R. Co.,* 60 South. 566, in which the rule as stated in the Moore case was referred to, the train was also running in an incorporated town when the deceased was struck. There is a statute in this state (section 4043 Code of 1906) which limits the

rate of speed to six miles an hour for the running of a train through cities, towns and villages, and renders the company liable for damages which may be sustained from the operation of trains while they are going at a greater speed.   In the Moore case it was also shown that the night was dark and foggy.   In rendering the opinion in that case, McLean, J., addressing himself directly to the case before the court for decision, said: "To run at night a railroad train propelled by the powerful and dangerous agency of steam or electricity through an incorporated city or town and in violation of the statute at such a rate of speed as to make it impossible, by the exercise of ordinary care, to stop the train within the distance shown by the glare of the headlight of the engine, must, from the necessities of the case, be regarded and looked upon as reckless conduct.   The common law, as contradistinguished from statutory law is nothing more or less than common sense, honestly applied to the practical affairs of life; and it is manifest that to run a train of cars, propelled as aforesaid, at such a dangerous rate of speed, through a populous section of the county, is dangerous in the extreme, well calculated to produce injury, not only to persons on the track, but to the passengers on the train, and may be well characterized as reckless conduct, and such as the law denominates willfulness."

It seems clear to us that the court in rendering the opinion had in mind the facts of the case then under review, and only intended to decide that the running of a train at night through an incorporated municipality at a rate of speed in violation of the statute, and so rapidly that the train could not be stopped within the distance shown by the glare of the headlight, should be deemed such reckless conduct as amounted to negligence.   In the case before us, we do not find any violation of the statute regulating the rate of speed nor any reckless running of the train, nor any carelessness on the part of appellant's servants.   The accident did not occur in an incorporated

town or city but in the country. It cannot matter in this case whether the train could have been stopped within the distance of the glare of its headlight for the reason that the mule was seen as soon as it reached the track and was always within the glare of the headlight, and always within the vision of the engineer, who was endeavoring to prevent its injury.

We believe that the peremptory instruction should have been given. The case is therefore reversed, and judgment entered here in favor of appellant.

*Reversed.*