PAYNE, Director General, *et al. v.* HAMBLIN.

[89 South. 620, No. 21904.]

RAILROADS.　*Speed of forty-five miles per hour in country held not negligence as to animal on track.*

In a suit for damages for killing a mule by a train, running at a speed of forty-five miles per hour, at night, in the country, the railroad company is not liable where the engineer did everything reasonably required to prevent the injury after discovering the animal upon the track, the train being properly equipped with appliances in good condition; and this is true even though the headlight was incapable of showing the object on the track at such distance as would enable the engineer to stop his train after seeing it. At such a place, night or day, it is not ordinarily, negligence *per se* to run at a speed of forty-five miles per hour with proper and standard equipment.

APPEAL from circuit court of Madison county.
HON. W. H. POTTER, Judge.

Action by Mannie Hamblin against John Barton Payne, Director General, Agent of the United States, and the Illinois Central Railroad Company. Judgment for plaintiff, and the defendant appeals. Reversed, and judgment entered for the defendant.

*May, Sanders & McLaurin,* for appellant.

The brief for the appellee attempts to demonstrate that the declarations of this court in the Frazier case do not speak the law on the subject, and cites, in support of his contention, numerous Alabama cases. It may be conceded that the Alabama cases cited by counsel are in conflict with the Frazier case, and that the Alabama cases correctly announce the law in the state of Alabama, but since of course, the case may be decided according to the law of the state of Mississippi, Alabama decisions in conflict with the Mississippi decisions do not lead us toward the light.

In the *Frazier case,* 104 Miss. 372, 61 So. 547, this court, in limiting the rule laid down in the case of *Nixon* v. *Railroad Co.,* 103 Miss. 412, and *Railroad Co.* v. *Moore,* 101 Miss. 768, spoke with deliberation, with clearness and with accuracy, and took pains to restrict the operation of the rule laid down in the Moore case and the Nixon case so that the broad language employed in those cases should not mislead the courts and the bar, and expressly narrowed the language in those cases to the facts of those cases and declared that the rule stated, viz.: that it is negligence to run a train of cars through a populous neighborhood, as, for example, municipalities, at so great a rate of speed that the train could not be stopped within the distance in which an object could be seen on the track, constituted a violation of the statute and amounted to negligence, but that this rule has no application in the case of animals trespassing on the track in the country.

And later, following the sound principle, as announced by this court, declared in the case of *Yazoo, etc., R. R. Co.* v. *Jones,* 71 So. 309, that the railroad company was not liable as for negligence in a case practically on all-fours with the instant case. According to the statement of facts appearing in the report of the case, the following is what the record shows: "The appellant's engineman testified that he was running his train about fifty miles an hour in the country and that he was in his proper place on the

engine, keeping a lookout ahead, and that his headlight
revealed the mules on the track about four or five hundred
feet ahead of the train; that the engine was properly
equipped and all equipment was working well; that he im-
mediately shut off the steam, blew the stock alarm, and ap-
plied the emergency brakes, and did all that he could to
prevent the accident, but that the train could not have
been stopped in less than twelve hundred feet after the
brakes had been applied, and that the mules were struck
by the engine before the engine could be stopped; that the
train ran about five hundred feet after he first discovered
the mules until they were struck; that they were running
up the track when overtaken and struck; and that the ac-
cident was unavoidable."

On the state of facts, the plaintiff recovered a judgment.
The railroad company appealed the case, and in reversing
the judgment of the court below, the court said: "There
is no obligation on the servants of the company to keep
a lookout for trespassing stock. We think the engineman
gave a perfectly valid reason for not seeing the mules ear-
lier, and we can find no facts or circumstances warrant-
ing a belief that he falsified. We are unable to say that
the engineman's statement of the facts is unreasonable in
the absence of any evidence tending to a contradiction
thereof, and we find no such evidence in the record."

In the Jones case it appeared that the engineer was
keeping a lookout ahead, and the headlight of his engine
revealed the mules on the track about four or five hundred
feet ahead of the train and running away from the train,
that the train ran about five hundred feet before overtak-
ing the mules, and that the train running at the rate of
speed at which it was running could not be stopped short
of twelve hundred feet, more than twice the distance that
the mules could be seen on the track. In the instant case,
the mules was discovered some two or three hundred feet
ahead of the train and the engineer testified that it was
not possible to stop the train short of nine hundred feet;
that there was nothing he could do to avoid the accident.

In all essential particulars, the Jones case and the instant case are analagous, and for aught that appears they were both gray mules. It will be noted that the Jones case was decided several years after the Frazier case, and is in accord with the principles announced therein, and the court took pains to observe in deciding the case, that the engineman was under no duty to keep a lookout for trespassing stock; and, of course, as the engineer in the present case was under no duty to keep such lookout, it was not negligence for the train equipped with the best headlight obtainable, to be run at such rate of speed through the country as that it could not be stopped within the distance in which the trespassing mule was first observed by the engineman.

We respectfully submit that for the court to affirm the judgment in this case, it must first overrule the Frazier case and the Jones case, thereby rendering negligent the doing of that which was, under those decisions, not negligence when done.

We respectfully submit that the judgment ought to be reversed and judgment entered here for the appellant.

*H. B. Greaves,* for appellee.

The only authorities which appellant cites to overcome the authority of the *Railroad Company* v. *Moore,* 101 Miss. 768, cited and approved in *Nixon* v. *Railroad Co.,* 103 Miss. 405, is the case of *Railroad Company* v. *Frazier,* 104 Miss. 372. We have read the case of Frazier, and we were satisfied, when we wrote our first brief and cited it before we received appellant's brief that that case did not destroy the effect of the other two cases cited by us, as the facts in those cases were not on all-fours with the facts in this case. In the Frazier case the court says, middle page 377, 104 Miss.: "The mule jumped on the track from behind a bank at the end of a cut between thirty and forty feet ahead of the engine, and immediately upon seeing the mule, the engineer applied the air brakes, blew the whistle and did

all that could be done to stop the train and prevent the mule being struck."

It is perfectly manifest that in this case the headlight had nothing to do with the accident, as if the headlight had thrown a light a mile up the track, there would have been no possible way for the engineer to have seen the mule before it jumped on the track if the facts stated by the court are correct. The court in that case based its opinion on the case of *Railroad Company* v. *Greaves,* 75 Miss. 360. It happens that the writer of this brief was the unfortunate appellee in that case and (disregarding the maxim that, "A man who is his own lawyer has a fool for a client") being over-zealous to press to the jury the fact that the railroad company had no right to needlessly run over horses on the track, drew an instruction which proved to be his undoing. So I submit that a reading of that case would show that the foundation on which the court rested its opinion, does not conflict in the least with this case.

The court in its opinion in the case of *Nixon* v. *Railroad,* 103 Miss. 412, in quoting from the Moore case did not say "through an incorporated city, town or village." Read the several authorities which hold likewise in other states. We find that instruction which was given by the court here was approved by the supreme court of Alabama in the case of *Louisville & Nashville Railroad Company* v. *Morelin Brewing Co.,* 150 Ala. 390, 47 So. 723. There the court charged the jury as follows: "That if they believed from the evidence that defendant's locomotive was running at such rate of speed that it would have been impossible, by the use of ordinary means and appliances, to stop their locomotive to prevent the injury to the stock within the distance where the stock . . . could have been seen by the aid of the headlight, then the defendant was guilty of negligence." See instruction at bottom of page 724, 43 So.

In the case of *Southern Railway Company* v. *Pogue,* 40 So. 565, 145 Ala. 454, was a case where a mare was killed

by the railroad company, and the evidence tended to show that the mare ran on the track suddenly from the woods so fast that it was impossible to stop the train before the mare was struck. So this was a case in the open country. The court charged the jury in the Pogue case at page 565, 40 So., as follows: "The court charged the jury that if they were reasonably satisfied from the evidence that the horse was killed by the engineer running the train at such a rate of speed that it could not be stopped by the use of the headlight, that they would find for the plaintiff," which instruction was approved by the court in the case of *Central Georgia Railroad Company* v. *Maine*, 42 So. 108, the court gave the following instruction: "It is negligence in a railroad company to run its train in the nighttime at such a rate of speed that it is impossible, by the use of ordinary means and appliances, to stop the train within the distance in which stock on the track can be seen by the aid of a headlight, and if the injury results from such running, the company is liable to the owner of the stock injured." This was a case where the mule was killed in the country. The opinion of HARRELSON, J., approved this instruction and cited a number of authorities in support of his contention. See page 109, 2d paragraph.

These and other decisions of the court recognize the principle, that the foregoing principle is not applicable where the engineer is competent, is keeping a proper lookout and does not see and cannot see the approaching animal, on, or in dangerous proximity to, the track, and it comes suddenly thereon so close to the train that the engineer cannot stop in time to prevent the accident.

The Alabama court recognized the Frazier case and differentiates the Frazier case from the instant case. Read the opinion, bottom page 108: "The principle often declared is, if a railroad company knowingly runs its trains, in the absence of intervening unusual natural causes, under such conditions as would make it impossible for those in charge to prevent injuring stock straying on its track, and injury results, it is accountable for the loss. And these

conditions are said to exist, when the train is run in the nighttime, at such a fast rate of speed that, by reason of the darkness of the night, stock cannot be seen by the aid of the headlight, in time to prevent the injury by use of the ordinary means and appliances usually found on railroad trains."

We submit that the case of *Railroad Company* v. *Moore*, and *Nixon* v. *Railroad*, was not based on the fact that it was in an incorporated city that these accidents happened, and the court in its opinions did not so say.

We respectfully submit that unless the court desires to take a step backward, that the instruction given the plaintiff was correct and this case should be affirmed.

HOLDEN, J., delivered the opinion of the court.

The appellee, Hamblin, recovered a judgment for one hundred and seventy-five dollars for a mule killed by the running of one of the appellant's passenger trains at night, in the country. The mule appeared upon the track with a sack over its head and was struck by the train running at the rate of forty-five miles per hour. The engineer and fireman were the only witnesses who saw the striking of the mule by the train, and their testimony was undisputed at the trial. They both testified to seeing the mule upon the track with the sack over his head, and that the sack had two holes cut in it for the ears of the mule to come through; that they afterwards found the sack on the front part of the engine with blood upon it. The engineer testified that the equipment and appliances of the train were in good order, that the headlight was the standard electric headlight and was in good order, but that by it he could not distinguish as small an object as a mule on the track farther than two hundred and fifty feet ahead of the engine. In other words, the testimony of the engineer is to the effect that the headlight was not sufficient for him to distinguish a mule on the track more than two hundred and fifty feet away, and that he could not stop his train in that

distance when he was running forty-five miles per hour, as was the case here. He said the headlight was the standard electric headlight used by all railroads, was in good condition, and that a large object, such as a car, could be seen by this light at a distance far enough away for him to stop his train while running at forty-five miles per hour.

He testified that as soon as he saw the mule upon the track he made every reasonable effort to prevent the in-- jury, but that it was impossible to avoid the killing of the mule because the train could not be stopped in the short distance after seeing the animal upon the track.

At the conclusion of the testimony the defendant railroad company requested a peremptory instruction to find for it, which was refused by the court, and the case was submitted to the jury, which resulted in a verdict for the appellee, and hence this appeal by the railroad company.

The appellant assigns several errors for reversal, but we shall notice only one, and that is whether the court erred in refusing the peremptory instruction asked by the defendant railroad company.

The record conclusively shows that the mule was upon the track in the country, not in a municipality, when struck, and that the engineer did everything reasonably required of him to prevent the injury after he discovered the animal upon the track. It is also undisputed in the record that the equipment, appliances, and headlight of the train were in good condition and of the proper and standard character. This being true, it seems obvious to us that the railroad company was guilty of no negligence; and therefore the peremptory instruction should have been granted.

But it is contended here by the appellee that the railroad company was guilty of negligence in running its train at the rate of forty-five miles per hour at night with a headlight that was incapable of showing a mule, or any object, on the track at such distance as would enable the engineer to stop his train after seeing the object on the track. And we apprehend that the case below was submitted to

the jury upon this theory alone, depending for support upon the rule announced in *Railroad Co.* v. *Moore,* 101 Miss. 768, 58 So. 471, 39 L. R. A. (N. S.) 978, Ann. Cas. 1914B, 597, and *Nixon* v. *Railroad Co.,* 103 Miss. 405, 60 So. 566.

But we think the case before us does not come within the rule announced in the 'Moore' and Nixon Cases, but comes within the rule announced in *Y. & M. V. R. R. Co.* v. *Frazier,* 104 Miss. 372, 60 So. 547. In the latter case the Moore and Nixon Cases were discussed by the court and a clear differentiation upon the facts was noted, and we do not feel that much can be added by a further discussion of the question in the present case.

It is clear to us that in the Moore Case which was followed by the Nixon Case, the court predicated negligence of the railroad upon the particular facts there involved, namely, that the train was running at an unlawful and dangerous rate of speed within a municipality, through a populous section of the country, on a dark and foggy night. But in the *Frazier Case, supra,* and the case before us now, the facts are quite different, in that the injury occurred out in the country, at a place where it was not unlawful, nor negligence *per se,* to run more than six miles per hour. At such a place, night or day, it is not, ordinarily, negligence *per se* to run at a speed of forty-five miles per hour with proper and standard equipment. We are therefore convinced that the lower court erred in refusing the peremptory instruction asked by the railroad company.

While it is not material to a decision of this case, we have not overlooked the undisputed testimony of the engineer and fireman with reference to the sack that was on the mule's head at the time he was struck. It does not appear who it was that cut the ear holes in the sack and fit it over the mule's head, but it was done evidently for the purpose of blinding the mule for an unworthy motive. It endangers the lives of the persons on the train to strike a large animal on the track, as it sometimes results in derailment of the train. If the animal in this case had been

able to see the train, he probably would have gotten off the track uninjured.   To say the least of it, the remarkable fact of the mule appearing blindfolded upon the track is enough to excite reasonable suspicion in the premises.

The judgment of the lower court is reversed and judgment entered here for appellant.

*Reversed, and judgment here for appellant.*