81 So.2d 321

## LOUISVILLE & NASHVILLE RAIL-ROAD CO.

v.

### Winston MOSELEY.

**2 Div. 341.**

Supreme Court of Alabama.

May 12, 1955.

Rehearing Denied June 23, 1955.

E. A. Stewart, Pettus, Fuller, Reeves & Stewart, Selma, and Steiner, Crum & Baker, Montgomery, for petitioner.

John W. Drinkard, Linden, and Roy W. Kimbrough, Thomasville, opposed.

STAKELY, Justice.

We granted certiorari in order that we might consider what is known in the operation of railroads as the "headlight rule". In its opinion the Court of Appeals said:

"Also, in this State, a railroad company injuring stock by the running of its train in the night-time at such rapid rate of speed that it is impossible, by the use of

ordinary means and appliances, to stop the train and prevent the injury, within the distance in which the stock upon the track could be seen by the aid of the headlight is guilty of negligence, which, if it caused the injury, entitled the owner to recover."

■ Recently this court denied certiorari in the case of Louisville & Nashville R. Co. v. King, 37 Ala.App. 182, 67 So.2d 49, certiorari denied 259 Ala. 358, 67 So.2d 51. The King case and the present case are similar in many respects but they differ materially in one respect. In the King case the cows were killed on a straight track. In the present case the train was being operated on a wide curve to the right. The curve was not crossed by a public road so that § 170, Title 48, Code of 1940, has no application. The statutory requirements of § 170 which provide for signals and limitations of speed where the train is entering a curve has no application to trains entering curves which are not crossed by a public road. Alabama Great Southern R. Co. v. Smelley, 237 Ala. 471, 187 So. 630.

It is our understanding that all the Alabama decisions where this court has applied the headlight rule are cases where straight tracks are concerned. It is contended by the petitioner that the case of Mobile & O. R. Co. v. Chambers, 215 Ala. 464, 110 So. 817, 818, is a case involving a track with a curve. It is true that in the Chambers case the track appears to have been a curved track, but it is not clear to us that the basis for the decision is the curve in the track. In that case the court discussed the evidence and reversed the trial court for giving the affirmative charge for the plaintiff and says:

"A jury question was presented as to keeping a proper lookout, in the night and during a drizzling rain, when entering upon and proceeding around the curve at a high rate of speed."

We cannot say that the Chambers case holds that the headlight rule does not apply on curves.

At this point, however, we would like to say that in view of the decisions involving the headlight rule in Alabama, we can well understand how the Court of Appeals reached its present conclusion.

■ It seems to us that there is a real difference in applying the headlight rule to the operation of trains at night on straight tracks and the operation of trains at night on curves except where a statutory duty is prescribed. On straight tracks objects or animals may be seen within the range of headlights at considerable distances but where a curve in the track is concerned, "the headlight shines straight ahead and doesn't shine around the curve before the engine makes the curve." According to the findings of fact by the Court of Appeals the engine was of the "steam-type and was properly equipped with all standard mechanical devices for engines of this type, all of which were in good operating condition."

Necessarily the range of vision of those operating a train on a curve is restricted to a very limited distance. In the case at bar according to the findings of the Court of Appeals the engineer could see objects on the particular curve a distance of not more than 150 feet ahead and it was undisputed that he could not have seen them before he did. The findings of the Court of Appeals showed the train was traveling at a speed of thirty miles per hour and that at such speed it would require approximately one-half mile to bring the train to a stop. Obviously it would be necessary for the train to travel at a very low speed in order to stop within a distance of 150 feet.

It appears to us to be unreasonable to require that the headlight rule be applied to the operations of trains in the country on curves in the nighttime in Alabama. We do not believe that such a rigid requirement should be imposed on the operators of trains. Ordinarily it is the law of Alabama that "It is the right of railroads in this state to run trains at any speed that is safe for their passengers and freight, except under the circumstances when statutory precautions are exacted." Cannon v. Louisville & N. R. Co., 252 Ala. 571, 42 So.2d 340, 345; Central of Georgia R. Co. v. Robertson, 203 Ala. 358, 83 So. 102.

It is inconsistent to require trains at night to be able to stop within the range of headlights on curves, as in this case, in the light of the rule of operation to which we have referred.

We are not willing to overrule the Alabama cases establishing the headlight rule where the operation is on a straight track nor to hold that such rule should not apply on a curve which is so slight as to constitute practically a straight track. However the Alabama law should not make the headlight rule applicable to tracks with a substantial curve in the country where there is no public crossing on the curve. From our examination of the authorities, Alabama is one of the few states, if not the only state, in which the headlight rule is recognized and in some of the states where it was formerly the law the rule has been abandoned as being archaic and obsolete. 74 C.J.S., Railroads, § 601, p. 1195; 44 Am. Jur. p. 839; 29 A.L.R. p. 1049. The case of Cameron v. Northern Pacific Ry. Co., 234 Minn. 355, 48 N.W.2d 540, 545, decided in 1951, appears to contain a good statement of the modern rule followed in other jurisdictions.

"We do not regard the fact that the speed was such that the train could not be stopped within the range of its headlights as a special circumstance affecting the general rule. If it were, substantially all night travel would fall outside the rule. The headlight on defendants' train was of a modern type, complying fully with interstate commerce commission's regulation governing headlights on trains in interstate travel. [I.C.C. Bureau of Locomotive Inspection (1947), Rule 129(a).] It was in good working order. There was no negligence involved in its use. Under these circumstances, the interest of the public in speedy transportation and regular time schedules during both day and night, requires us to hold that the fact that a train cannot be stopped within the range of its headlights is not a special circumstance which will make the usual speed of a train negligent. As was said in Fischer v. Chicago & N. W. Ry. Co., 193 Minn. 73,

76, 258 N.W. 4, 5: * * * 'We are living in an age where speed in transportation of passengers and goods is an all-important consideration.'

"The contra decisions of other jurisdictions are few and old [Birmingham Mineral R. Co. v. Harris, 98 Ala. 326, 13 So. 377], and the more modern authority is in accord with the position we here take. [Moody v. Texas & P. Ry. Co., La.App., 37 So.2d 346; Edwards v. Thompson, La.App., 2 So. 2d 493; Payne v. Hamblin, 126 Miss. 756, 89 So. 620, 23 A.L.R. 146.]"

The Mississippi Court in the case decided in 1912, St. Louis & S. F. R. Co. v. Moore, 101 Miss. 768, 58 So. 471, 39 L.R.A.,N.S., 978, adopted the headlight rule, cited and followed Alabama decisions. The Mississippi Court, however, in a decision rendered in 1914 in the case of Yazoo & M. V. R. Co. v. Frazier, 104 Miss. 372, 61 So. 547, and again in 1921 in the case of Payne v. Hamblin, 126 Miss. 756, 89 So. 620, 23 A.L.R. 146, confined the rule to the facts of each of those cases in both of which the train was being operated through a municipality and through a populous section. In the Frazier and Hamblin decisions the Mississippi Court held that it is not negligence for a train to be operated at nighttime in open country at such speed as to be unable to stop within the range of the headlights.

The Louisiana Court in the case of Blackburn v. Louisiana Ry. & Nav. Co., 144 La. 520, 80 So. 708, decided in 1919, cited in 29 A.L.R. 1049, applied the headlight rule to operation of trains in populous areas. The Louisiana Court in the case of Pinckley v. Texas & P. Ry. Co., La.App., 165 So. 504, 506, decided in 1936, held that the rule in the Blackburn case was applicable solely to the facts of that case and that it did not apply to railroads generally. The court further held that while the headlight rule did not apply to railroads, in this connection said: "To apply it (the headlight rule) to railroads generally would materially impair the efficiency of the operation of their passenger trains and work inconvenience and hardship on the general public."

106

In the case of Edwards v. Thompson, La.App.1941, 2 So.2d 493, 495, the Louisiana Court said that "To hold defendant liable for the value of the mules, we would have to hold that it was negligence for the curve to be in the track in this particular place. We are not asked to do this, nor would it be reasonable to do so." The Louisiana Court went on to say,

"Trains, of necessity, must operate on schedules. These schedules require that they run at definite speed, in order to cover certain distances within fixed periods. To accomplish this, speed cannot be reduced because of rain, fog, smoke or other abnormal atmospheric conditions, nor for curves; nor are they required to operate at such rate of speed that they may be stopped within the distance illumined by their headlights as is required of automobiles."

We point to the cases in other jurisdictions as being persuasive that we should not apply the headlight rule to a case such as the present case where the train was being operated on a wide curve in the nighttime in the open country where no public crossing is involved.

While we have modified the opinion of the Court of Appeals so as to make the headlight rule inapplicable to the operation of trains on curved tracks, as we have stated, we still follow the Court of Appeals in its finding that the plaintiff is entitled to recover in the present case. The engineer testified that there was a cylinder cock to let off steam, it purpose being to relieve water pressure to keep from blowing the cylinder head off and not to scare animals. The fireman, however, testified that the cylinder cock is usually opened to scare animals away from the track but he didn't recall it was done on this occasion. This made a case for the jury on the issue of negligence under the holding of the Court of Appeals.

The judgment of the Court of Appeals is affirmed.

Affirmed.

All the Justices concur except LAWSON, J., who concurs in the result.