# East Tennessee, Virginia and Georgia Railroad Company *v.* Bayliss.

*Action against Railroad Company for Injuries to Stock.*

1.  *Statement of counsel in argument before jury; when a reversible error.*—In an action against a railroad company to recover damages for injuries to stock, counsel for the plaintiff, appellee in this court, speaking, in his concluding argument before the jury, of an engineer who was in charge of defendant's train at the time of the injury, and who had been examined as a witness on behalf of the defendant, said: "Engineers on railroads, like this engineer, have to emigrate if they do not conform to the wishes of their employers, and testify as their employers' interests require; they testify with a halter around their necks."  *Held,* on exception reserved thereto by defendant,

[East Tenn., Va. and Ga. Railroad Co. v. Bayliss.]

(*a*) That if this had been stated as an inference or opinion, based on the witness' connection with the railroad, and with the act complained of as negligent, counsel would have kept within legitimate bounds.

(*b*) But having been stated as a fact, not as an inference or opinion, and the bill of exceptions, which purports to set out all the evidence, not showing any fact or circumstance in evidence which justified such a line of argument, it should have been ruled out, and the jury cautioned against allowing it to have any influence with them; and the failure of the court to so rule is a reversible error.

2. *Liability of railroad company for injury to stock; when omitted duty fails to confer right of recovery.*—A railroad company is not necessarily liable for injuries done to stock, on proof tracing some acts of omitted duty to the company's employees; if the omitted duty did not cause, or in any way contribute to the injury, its omission confers no right of recovery.

3. *Same.*—Nor is it necessary that the company's employees shall attempt the impossible; and hence, if, without fault of such employees, a danger is not, and can not be discovered until all appliances known to the best regulated railroad motive power are clearly powerless to avert, or mitigate the injury, then a failure to apply such useless agencies imposes no liability; and particularly would this be the case, if, by attempting the impossible, the chances of another or greater peril would be increased.

4. *Same.*—The engineer, while attending to the other wants of his train, must be constantly on the lookout for obstructions on the track; and this requirement is met, when he bestows on the service that steady, regular care and watchfulness which his other duties would allow a very careful and prudent person to give to it.

APPEAL from Lawrence Circuit Court.

Tried before Hon. H. C. SPEAKE.

This suit was brought by John K. Bayliss against the East Tennessee, Virginia & Georgia Railroad Company, a corporation operating a railroad in this State, to recover damages alleged to have been suffered by the plaintiff, by reason of the negligent killing of a horse belonging to him by defendant's locomotive. The cause was tried on issues joined on the pleas of not guilty and the statute of limitations of one year, the trial resulting in a verdict and judgment for the plaintiff.

No eye-witnesses to the killing were examined by the plaintiff; but the evidence introduced on his behalf tended to show that his horse was killed by the locomotive of the defendant's "west-bound" passenger train, on the morning of the 16th October, 1881, before daylight; that the horse, just prior to being killed, ran along the side of defendant's track, most of the way near the ends of the cross-ties, in the direction in which the train was moving, about one hundred and seventy-five yards, and was killed in attempting to cross the track; that the train was running on a down grade; and that the track was straight and unobstructed for about one mile east of the place where the horse was killed. The value of the horse was shown.

The defendant examined as a witness the engineer who was

[East Tenn., Va. and Ga. Railroad Co. v. Bayliss.]

in charge of the locomotive by which the horse was killed, who testified, in substance, among other things, that he never saw the horse until it sprang on the track about ten feet in front of the engine; that the instant he saw it, he reached his hand up to sound the cattle alarm, but before he could do so, the engine had struck the horse; that when it sprang on the track, the front of the engine was so near it, that it was impossible to stop the train, or to reverse the engine, or to sound the cattle alarm, or to ring the bell, or to do any thing, before the horse was struck; that the head-light on his engine was as good as any in use by any railroad, and was, at the time of the accident, in good order and burning brightly, but by it he was not able, at that time of night, to discover an object more than one hundred yards ahead of him on the track; that "the head-light, by reason of the focus of its light, enables an engineer to see objects at some distance on the track better than objects near at hand, and that objects on the track could always be seen by the head-light better than objects on the side of the track;" that "by use of his head-light he was enabled to see on either side of the track, at the distance of one hundred yards, about twenty-five or thirty feet, at the distance of fifty yards about twenty feet, and at the distance of ten or fifteen yards, about four or five feet, beyond the cross-ties;" that "when the horse sprang upon the track, it came at right angles with the track, and was struck broadside;" that at the time of the injury he was running on a down grade at the rate of thirty-five or forty miles an hour; that he was several minutes late, having been delayed by a connecting line, and he had been endeavoring "to make up the time so lost whenever and wherever he could, as required by defendant's schedule," but that, at the time of the injury, "he was not exceeding, but was obeying the directions of his schedule;" that when he entered the down grade, near the place of the killing, "he was careful to shut off steam, because the impetus already acquired, and the weight of the train rolling down the grade were sufficient, without the addition of steam power, and that it is usual for engineers to do this when they reach a down grade; that he was, at the time, and until he struck said horse, in the constant and active discharge of all the duties pertaining to his position, including the duty of shutting off the steam, and of looking after the water in his boiler to prevent its getting too low, of watching the steam connections with his air brakes, and observing the time he was making, and the schedule regulations upon which he was running; and, in addition to all these, when his attention was not necessarily called off by these other duties, he was keeping a constant and vigilant lookout; that he could not have seen said horse before he did see it

(which was too late to avert the injury by the use of any human agency), if the horse had been his own property, instead of the plaintiff's; that if a tree had fallen across the track, at the place where said horse was killed, he could not have seen it, at the time of night in question, by the light of his head-light within a less distance than one hundred yards, and, at the speed he was going, he could not have stopped the train within a less distance than two hundred and fifty yards, although his life depended upon it, by the use of any human appliances;" and that " he was keeping a sharp lookout, and did not see any obstacle or any object anywhere until the animal made the sudden leap on the track as stated." The defendant also offered evidence tending to show that its road-bed and track were in good order; that its locomotive and cars, and the equipments and appliances thereof, were of the best and most approved kind, and in perfect order, and that the engineer was faithful, capable and efficient, and among the best on the road. Defendant also introduced evidence tending to show that the horse had been grazing on the north side of the track, not far from an embankment about four feet high; that it ran along the side of said embankment, as indicated by its tracks, and along a ditch succeeding the embankment on the west, for ninety feet, when it attempted to cross and was killed; and that there was some undergrowth about the embankment, where stock had been grazing. The bill of exceptions purports to set out all the evidence, the substance of the material portions of which are stated above.

The court charged the jury, *ex mero motu*, among other things as follows: (1) " If the jury believe from the evidence that the engineer in charge of the train, on perceiving the horse on the track of the road, failed to use all the means within his power, known to skillful engineers (such as the application of his brakes, and the reversal of his engine, etc.), in order to stop the train; and the jury further believe that the engineer had time to apply his brakes, and reverse his engine, and use all means in his power to stop the train, then the engineer would be guilty of negligence." (2) "It is for the jury to determine, from all the evidence, whether or not there was negligence upon the part of the engineer." To these portions of the general charge the defendant excepted, and also to the following charge, among others, given at the plaintiff's request: 1. "Engineers, in running trains, should always be on the lookout for obstructions; and when discovered, no matter when or where, should promptly resort to all means within their power, or known to skillful engineers, to escape the impending danger, or to avert the threatened injury; and engineers should exert a proper degree of watchfulness in order to discover ob-

structions upon the track. Less than this is not due diligence."

As recited in the bill of exceptions, "during the progress of the final argument by plaintiff's counsel to the jury, he made the following statement : ' Engineers on railroads, like this engineer, have to emigrate if they don't conform to the wishes of their employers, and testify as their employers' interests require. They testify with a halter around their necks.' To this remark defendant immediately excepted, because it was the statement of facts as facts, of which there was no evidence. The presiding judge simply said to defendant's counsel, ' Take your exception.' Thereupon plaintiff's associate counsel said, ' Go ahead ; let them take their exception.' And there was no withdrawal, or attempt at withdrawal of said remark by said counsel ; but he added that he had not desired to do injustice to defendant, or its engineer. Nor was any instruction given in reference thereto by the court."

HUMES, GORDON & SHEFFEY, for appellant.

W. P. CHITWOOD and J. C. KUMPE, contra.

STONE, J.—In the concluding argument, counsel for the appellee, speaking of a witness who had testified for the defendant, said : "Engineers on railroads, like this engineer, have to emigrate if they do not conform to the wishes of their employers, and testify as their employers' interests require. They testify with a halter around their necks."

There is no question that an agent or employee in any case is supposed to be favorably inclined to the interests and wishes of his employer. This is natural and human, though not universal. And this bias, if bias it be, is all the more natural, if the agent be testifying to acts of his own performance. But, like all other witnesses, his testimony should be weighed fairly, impartially weighed ; weighed by his intelligence, his manner, the consistency of his story, its probability or improbability, and all those other tests, by which a narration convinces us, or fails to convince us. The juror is in search of truth, and should be blind to consequences. When he follows his convictions implicitly, he vindicates the jury system, and his fitness for its duties.

Did counsel go beyond the boundary of legitimate argument in this cause?

Speaking of the rule in cases like this, we, in Cross v. State, 68 Ala. 476, said : "The statement" of counsel, to authorize reversal, "must be made as of fact; the fact stated must be unsupported by any evidence, must be pertinent to the issue, or its natural tendency must be to influence the finding of the

jury, or the case is not brought within the influence of the rule."
In the later case of *Wolffe v. Minnis*, 74 Ala. 386, the language
of counsel, to which exception was reserved, was, that his client
was a "large-hearted, great-souled, confiding, trusting man."
There was no testimony to support this assertion, nor was there
any thing in evidence from which it could be inferred.  The
design and tendency of the language. evidently were to induce
the jury to look favorably and charitably on any thing the
client may have done, or, perhaps, testified to.  Referring to
these strong adjectives, we said, when they are used as attri-
butes of character, they are facts, and are provable as other
traits of character are, when they become a material subject of
inquiry, if they ever can become so.  We reversed the case,
because the court did not instruct the jury to disregard such
unauthorized statements, when thereto requested.

If what was objected to in this case had been stated as an
inference or opinion, based on the witness' connection with the
railroad, and with the act complained of as negligent, counsel
would have kept within legitimate bounds.  It was not so
stated.  It was stated as fact.  Its meaning is, that there is a
rule or custom with railroad companies to discharge their em-
ployees, if they do not testify "as their employers' interests
require."  If this be so, then, indeed, do "they testify with
halters round their necks."  Such terror, duress, or restraint,
would be well calculated to exert its influence on many minds,
and would materially impair the weight of testimony thus given.
See, also, *Motes v. Bates*, 74 Ala. 374.

The record before us informs us it contains all the evidence,
and there is nothing shown to justify the line of argument pur-
sued.  It presented the common case of the officers in charge
of the train being the only eye-witnesses of the collision and
injury.  Such, of necessity, is generally the case.  It would
rarely happen that any person, other than the engineer and fire-
man, could have actual, personal knowledge of injury done to
stock, and the circumstances attending such injury.  The *onus*
being on the railroad to disprove negligence, after the injury is
shown, and the only possible means of making such exculpatory
proof being through its own employees, its condition is deplor-
able in the last degree, if its only attainable witnesses are
necessarily to be disbelieved, for no other reason than that they·
are employees of the railroad.

The language copied above should have been ruled out, should
have been declared improper, and the jury should have been
cautioned against allowing it to have any influence with them.
We go further.  When counsel trespass on the domain of un-
proven facts, the presiding judge should promptly set aside any
verdict they may recover, unless he is clearly and affirmatively

[East Tenn., Va. and Ga. Railroad Co. v. Bayliss.]

convinced the verdict is right, and would have been the same, in the absence of such unauthorized argument. The law, by imposing on railroads the duty and burden of disproving all acts of negligence, when they are shown to have inflicted an injury, is certainly exacting enough, without loading them down with additional burdens, that are neither proved nor provable. Corporations, under the same measure of proof, are entitled to the same verdict and judgment as individuals are entitled to. Less than this is not a verdict according to the evidence.

But in inquiries, such as those presented by this record, a second question of equal importance comes up. Did the alleged omission of duty cause the injury complained of?

When injury is shown, and some acts of omitted duty are traced to the railroad's employees, the railroad is not necessarily liable. If the omitted duty did not cause, or, in any way, contribute to the injury, its omission confers no right of recovery. Nor is it necessary that railroad employees shall attempt the impossible. If, without fault of such employees, a danger is not, and can not be discovered, until all appliances known to the best regulated railroad motive power are clearly powerless to avert, or mitigate the injury, then a failure to apply such useless agencies imposes no liability. And particularly would this be the case, if, by attempting the impossible, the chances of another or greater peril would be increased.—Code of 1876, §§ 1699, 1700 ; *M. & C. R. R. Co. v. Bibb*, 37 Ala. 699 ; *Ala. Gt. So. R. R. Co. v. McAlpine*, [*ante.* p. 113]; *Steele v. Char., Col. & Aug. R. R. Co.*, 11 S. C. 589.

That part of the general charge which was copied from *S. & N. R. R. Co. v. Williams*, 65 Ala. 74, is not erroneous. It does not, and was not intended to mean, that the engineer shall keep his eye steadily on the track before him, to the neglect of his other equally imperative duties. The movements of the eye are quick and rapid. The engineer, while attending to the other wants of his train, must be constantly on the lookout for obstructions ; and he meets this requirement, when he bestows on the service that steady, regular care and watchfulness, which his other duties allow a very careful and prudent person to give to it. See this case when formerly here, 72 Ala. 20.

For the single error, the judgment of the circuit court is reversed, and the cause remanded.