(83 South. 102)

CENTRAL OF GEORGIA R. CO. v. ROBERTSON.          (5 Div. 723.)

(Supreme Court of Alabama.          June 26, 1919. Rehearing Denied Oct. 23, 1919.)

1. CARRIERS ⬗280(1)—CARRIAGE OF PASSENGERS; DEGREE OF CARE.

Common carriers of passengers are held to the highest degree of care and diligence which is known to careful and diligent persons engaged in such business.

2. CARRIERS ⬗316(5) — INJURY TO PASSENGERS; PRESUMPTION FROM DERAILMENT.

Injury of a passenger upon the derailment or wrecking of his train which would not have happened without negligence of carrier, raises a presumption that the injury was proximately caused by negligence of the carrier, but the presumption may be rebutted by the carrier's showing that the derailment or wreck could not have been prevented by exercise of the highest degree of care on its part.

3. CARRIERS ⬗316(1) — INJURY TO PASSENGER; RES IPSA LOQUITUR.

Where the circumstances are such as to speak the negligence of the carrier, the doctrine of res ipsa loquitur is applicable in an action by a passenger for injuries while being transported.

4. CARRIERS ⬗316(1)—INJURY TO PASSENGERS; PLEADING.

Where negligence of a carrier is alleged in general terms only, recovery may be had on the doctrine of res ipsa loquitur.

5. CARRIERS ⬗316(5)—INJURY TO PASSENGERS; PLEADING RES IPSA LOQUITUR.

In an action for damages for injuries sustained by a passenger, when the train on which he was riding was derailed, held that the first count of the declaration was sufficient to allow recovery under the doctrine of res ipsa loquitur.

6. CARRIERS ⬗291—CARRIAGE OF PASSENGERS; CARE REQUIRED.

Mere lack of knowledge of defects such as broken rail caused by latent defect will not excuse a carrier unless he has exercised the proper degree of care.

7. CARRIERS ⬗280(1)—CARRIAGE OF PASSENGERS; USE OF SAFETY DEVICES.

Carriers being under the highest duty to provide and maintain suitable and safe equipments and appliances, must keep pace with the science and art of their business; and, while not bound to adopt every new device unless it contributes to safety, they must adopt those improved modes known to conduce to safety, and cannot escape liability for injuries to a passenger where they have not adopted safety devices generally in use by other carriers.

8. CARRIERS ⬗283(5)—CARRIERS OF PASSENGERS; CAREFUL EMPLOYÉS.

A carrier of passengers must employ careful and prudent servants, who are required to exercise that degree of diligence which very careful and prudent persons exercise in their own affairs.

9. CARRIERS ⬗297—INJURY TO PASSENGERS; SPEED.

Except for statutory regulations, a railroad company may operate its trains, both passenger and freight, at any speed compatible with safety.

10. CARRIERS ⬗316(1)—INJURY TO PASSENGERS; BURDEN OF PROOF.

In case of an accident resulting in injury to a passenger, a carrier has the burden of showing the uselessness of employing appliances which were not employed, but which ordinarily would prevent the injury suffered.

11. CARRIERS ⬗320(1)—INJURY TO PASSENGERS; PROVINCE OF COURT AND JURY.

Care and diligence is generally a mixed question of law and fact, and when the facts are undisputed and the deductions therefrom indisputable, or the duty is fixed by the law and is the same under all circumstances, the question is for the court; but, if the facts are disputed, or the inference of negligence is a matter of discretion, it must be submitted to the jury.

---

⬗For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**12. CARRIERS ⬤☞291—INJURY TO PASSENGERS; DEFECTIVE RAILS.**

In an action for injuries received by a passenger in a derailment, where it appeared that the carrier bought the rails from competent and reliable dealers, and that the derailment was caused by a break in a rail due to a defect which could not be discovered by ordinary and careful means of inspection, the carrier is not liable.

Appeal from Circuit Court, Lee County; Lum Duke, Judge.

Action by J. P. Robertson against the Central of Georgia Railroad Company. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

Barnes & Walker, of Opelika, for appellant.

J. Reese Murray and Erle Pettus, both of Birmingham, for appellee.

MAYFIELD, J. The action is by a passenger against a common carrier to recover damages for personal injuries alleged to have been received in consequence of the carrier's negligence, or the negligence of the carrier's agents or servants acting within the line and scope of their authority. The evidence without dispute showed the relation of passenger and carrier, and the alleged injury during the existence of the relation.

The evidence also showed without dispute that the injury was due to the derailment and overturning of the coach during transit in which the plaintiff was being carried.

There was much evidence to show the cause of the derailment of the train, most of it being to show that the wreck was due to a defective rail, and that the defect was a latent or hidden one not open to discovery or detection by the best, most prudent and careful inspection and test known to the profession of railroading, or those employed in manufacturing or dealing in steel rails. Most of the evidence went to show that the defect was a "transverse fissure," and that such was a latent defect, and could not be discovered by any known test.

[1-4] The evidence rebutted any cause of the derailment other than the broken rail. Not in every case of injury to a passenger does a presumption of negligence on the part of the carrier arise from the happening of the injury. In Georgia Pac. R. Co. v. Love, 91 Ala. 432, 8 South. 714, 24 Am. St. Rep. 927, this court, limiting the application of certain expressions used in Louisville & N. R. Co. v. Jones, 83 Ala. 376, 3 South. 902, said, quoting the language of the Supreme Court of Missouri in Dougherty v. Missouri R. Co., 81 Mo. 325, 51 Am. Rep. 239, that—

"Where the vehicle or conveyance is shown to be under the control or management of the carrier or his servants, 'and the accident is such as, under an ordinary course of things, does not happen if those who have the management use proper care,' it affords reasonable evidence, in the absence of explanation by the defendant, that the accident arose from want of care."

It is sometimes stated that the fact that a passenger is injured on a carrier's train raises the presumption of negligence, and casts upon it the burden of showing that it was not guilty of negligence. But it is evident that there are cases in which that broad statement cannot be made, for example, a case in which the plaintiff's evidence shows his injury to have resulted probably from some unavoidable cause—some cause outside the ordinary supervision and control of the carrier. Cent. of Ga. R. R. Co. v. Brown, 165 Ala. 495, 496, 51 South. 565.

Mr. Hutchinson thus states the rule and cases to which the presumption of negligence arises, and this rule has been repeatedly followed by this court as to several instances stated by Mr. Hutchinson:

"Where it is shown that an accident happened upon a railway, from which a passenger sustained an injury, by the breaking down or the overturning of the vehicle, or by a derailment of the train or of some of the cars, or by a collision between two trains or between two cars, or by an unusual jerk or jolt of the train, or by the parting of the train, or by the breaking down of a bridge, or by the falling of some of the appliances within the vehicle, or by an obstruction, which the carrier has placed too near the track, striking the side of the train, a prima facie presumption will arise that the accident was due to the negligence of the company or its servants. So where it is shown that the injury was caused by a spark from one of the company's locomotives, or by a block of coal which was thrown from the tender of an engine while it was passing the depot platform, or by the explosion of a locomotive boiler, the law will presume from the mere happening of the injury that the company was guilty of negligence."

See Hill's Case, 93 Ala. 514, 9 South. 722, 30 Am. St. Rep. 65; Jones' Case, 83 Ala. 376, 3 South. 902; Mallette's Case, 92 Ala. 209, 9 South. 363.

The law holds common carriers of passengers to the highest degree of care and diligence which is known to careful, diligent, and skillful persons engaged in such business. When the passenger during the relation is injured by the car in which he is being carried being derailed, wrecked, etc., or occurrence which would not happen without some negligence on the part of the carrier, this raises the presumption, prima facie only, however, that the injury was proximately caused by the negligence of the carrier, which presumption will authorize a recovery of damages against the carrier for the injuries suffered by the passenger, unless the carrier can rebut this prima facie presump-

tion by reasonably satisfying the jury that the derailment or other occurrence causing the injury could not have been prevented by the exercise of the highest degree of care on the part of the carrier, his agents or servants.

There are cases in which the doctrine of res ipsa loquitur appears. The circumstances in such cases are said to speak the negligence of the carrier. If, however, it is shown that the derailment or other occurrence causing the injury to the passenger was an inevitable accident, as the defect causing the wreck or derailment was a hidden or latent one that could not have been discovered or provided against though the highest degree of care and prudence had been exercised; that the carrier rebuts the prima facie presumption, and acquits himself of actionable negligence—it is often a difficult question to determine whether or not a plaintiff is entitled to the benefit of the presumption offered by this doctrine, though the proof shows a case within the influence of the rule. This is often so rendered difficult by the form of the pleadings, whether the allegation embraces such evidence. If the negligence be sufficiently charged in general terms only, then of course it will include cases within the doctrine res ipsa loquitur; but if it charges negligence in general terms, and then specifies particular acts, it may be doubtful whether the plaintiff is limited to proof and the right to recover to the particular acts so specified. See note to 24 L. R. A. 788, and 51 Am. St. Rep. 555, and cases cited.

[5] The first count alleges negligence in the most general terms, as follows:

"And the plaintiff avers that his said wounds, injuries, and damage were the proximate consequence, and caused by reason of the negligence of the defendants, their servants or agents as aforesaid."

The other counts were more specific, but somewhat general; the negligence being thus described:

"That the defendants' servants or agents, while acting within the line and scope of their employment, so negligently conducted themselves in and about the business of carrying the plaintiff as such passenger as aforesaid that the plaintiff received the wounds, injuries, and damage set out in the first count of the complaint."

Either allegation is sufficient to avail of the prima facie presumption of negligence, or to be within the doctrine of res ipsa loquitur. The real troublesome question is as to whether or not the defendant's evidence showed without dispute that it was guilty of no actionable negligence proximately contributing to the injury. In other words, did it show that the accident was an inevitable one, or such that the highest degree of care and foresight could not have prevented or provided against? If so, it was not liable as a matter of law. If not so shown without dispute, then it was a question for the jury, and the trial court properly declined to take the question from the jury. There is no material conflict in the evidence. If true, was it sufficient to rebut the prima facie presumption of negligence?

[6] Carriers are not absolute insurers of the safety of their passengers. They are, however, bound to use the utmost care, so far as human skill and foresight can go to secure their safety, and to prevent possible accidents which may arise from the condition of its roadbed, machinery of all kinds, and all other acts of negligence on the part of the carriers themselves, their agents or servants. This duty extends to safe and properly constructed bridges, trestles, culverts, ties, rails, and properly and safely spiking them to the cross-ties. Carriers now use dangerous agencies such as steam, electricity, etc.; hence the law enjoins upon them the utmost skill and care as to original construction, selection, maintenance, and operation of their agencies. Mere lack of knowledge of defects will not excuse the carrier unless he has exercised the proper degree of care and diligence to discover and prevent the defect. An appliance or machinery not obviously dangerous, which has been in constant use and uniformly proved safe, may be construed without imputation of negligence, where proper care and diligence has been used as to inspection.

[7] Carriers are under the highest duty to provide and maintain suitable and safe equipments and appliances; their safety should be established by the very best and surest tests recognized by experts in the business, and nothing can exempt him from liability as for defects therein, except that they are latent ones which no reasonable degree of skill and diligence would discover or prevent. Because accidents like the one in question are almost certainly fatal and dangerous to human life, the law enjoins the duty on the carrier to use such means of safety as science has made known and demonstrated to be useful, protective, and necessary to safety. They are required to keep pace with the science and art of their business, not to adopt, however, every new device unless it contributes to safety, but they must adopt those improved modes known to conduce safety; they must adopt those which are up to the standard of those in general use, and which are necessary for the safety of their passengers.

This court has thus formulated some of the duties required of railroads as common carriers of passengers which are applicable to this case:

"There have been such advancements in science, for the control of steam, and improvements in the machinery and appliances used by railroads, for the better security of life, limb, and property it would be inexcusable to continue

the use of old methods, machinery, and appliances, known to be attended with more or less danger, when the danger could be reasonably avoided by the adoption of the newer and which are in general used by well-regulated railroads. Not that it is required of them to adopt every new invention useful in the business, although it may serve to lessen danger, but it is their duty to discontinue old methods which are insecure, and to adopt such improvements and advancements as are in ordinary use by prudently conducted roads engaged in like business and surrounded by like circumstances. L. & N. R. R. Co. v. Allen, 78 Ala. 494." Richmond & Danville R. R. Co. v. Jones, 92 Ala. 218, 9 South. 276.

The cases on this subject were reviewed in the case of Caldwell, etc., Co. v. Watson, 183 Ala. 326, 62 South. 859, and the rules as applicable to master and servant restated. In that case, the majority of the court held that there was evidence tending to show that the machine in question was defective, and that therefore it was a jury question as to whether or not the master should have furnished another, notwithstanding the same type may have been used by others. This did not as matter of law acquit the master of negligence. The writer of this opinion dissented in the above case, on the ground, however, that in his judgment there was no evidence to show a defect; that the difference in the two classes of machines did not constitute a defect.

[8-10] Here there is no conflict in the evidence; no evidence of a defect except a latent one which all the evidence shows could not be discovered by all known tests; and hence no room to apply the rule announced in the case last cited.

The law requires of railroad companies the employment of very careful and prudent servants, and of these servants that degree of diligence which very careful and prudent persons take of their own affairs; but infallibility is not expected. Gothard v. A. G. S. R. R. Co., 67 Ala. 114; Cook v. Cent. R. R. Co., 67 Ala. 533; Tanner v. L. & N. R. R. Co., 60 Ala. 621; M. & M. Ry. Co. v. Blakely, 59 Ala. 471. But for special legislation railroad companies would be bound only to such diligence in the general prosecution of their business as would be dictated by sound reason applied to the successful use of their necessary privileges, and it is still the right of railroads in this state to run trains at any speed that is safe for their passengers and freight, except under the circumstances when statutory precautions are exacted. N. & D. R. R. Co. v. Comans, 45 Ala. 437. The law exacts of those using steam power for carriage extraordinary diligence; that which very careful men take in their own affairs. A. G. S. R. R. Co. v. McAlpine, 71 Ala. 545; Gothard v. A. G. S. R. R. Co., supra; Tanner v. L. & N. R. R. Co., supra. Impossibilities are not exacted of railroads, but the onus rests on them to show the fruitlessness of employing appliances which were not employed, but which ordinarily prevent injury actually suffered. A. G. S. R. R. Co. v. McAlpine, 75 Ala. 113; E. T. V. & G. R. R. Co. v. Bayliss, 75 Ala. 466.

[11] Care and diligence is generally a mixed question of law and fact. When the facts are undisputed and the deductions therefrom indisputable, or the duty is fixed by law and is the same under all circumstances, the question is for the court. But if the facts are disputed, or the inference of negligence is a matter of discretion, it must be submitted to the jury. A. G. S. R. R. Co. v. Jones, 71 Ala. 487; M. & C. R. R. Co. v. Lyon, 62 Ala. 71; E. T. V. & G. R. R. Co. v. Bayliss, 74 Ala. 150.

There are two lines of cases in this state somewhat analogous to the case under consideration. One class is the injury to animals or persons on the track of the railroad, where the statutes provide that such proof makes out a prima facie case of negligence, and casts the burden on the railroad to rebut the presumption thus arising. The other class, where property on or near the railroad right of way is ignited by sparks emitted from passing engines, that the law on proof of such facts raises the presumption of negligence, which the railroad is required to rebut. In the first class of cases, the rules as to sufficiency of proof was first avowed by Stone, C. J., in McAlpine's Case, 75 Ala. 113, and Bayliss' Case, 75 Ala. 466, and have been since followed.

"The rule governing the duty and liability of railroads is that their employés must bestow on the service that degree of care and diligence which very careful and prudent persons give to their own affairs of similar magnitude and delicacy. * * * The railroad is not liable for every injury it may inflict. It is only liable for such damages as are done to persons, stock, or other property which result from a failure to comply with the requirements therein expressed, or from some other negligence on the part of such company or its agents. * * *

" 'It is the duty of railroad companies to employ the best machinery and appliances which are in use, and the failure to employ them, in view of the hazardous agencies they control, the dangers necessarily incidental, is a want of the care and diligence a man of ordinary prudence would observe. The omission to provide them is a violation of the duty enjoined by law; and, if there be no more in the particular case than the omission and consequent injury, the court may, as matter of law, declare there is actionable negligence. The proposition must, however, be accepted with limitations and qualifications.'

"There is a correlation to the high degree of care and diligence exacted of those employed in the control of the steam engine. We have seen they are required to give to the service that degree of diligence which very careful and prudent persons bestow on their own affairs of like magnitude and delicacy. The corporation they serve should be held liable for their

actual or imputed dereliction to the same extent, and only to the same extent, as individuals would be held liable for the same conduct, under the same circumstances, and producing the same result. If jurors properly observe their sworn duty, they, in rendering their verdicts, will be governed alone by the testimony allowed to be given to them, and by the charge of the presiding judge. This is the sum and interpretation of their oath, and they have no discretion, save to weigh the testimony impartially, that they may arrive at the facts and render a conscientious verdict. Anything less than this, in any jury trial, is a palpable wrong, a mockery of justice, and a disgrace to the administration of the law. Natural persons and corporations, the richest and the poorest, the highest and the humblest, are alike equal before the law, have the same, and only the same, rights, and are under the same, and only the same, liabilities. There is no room or place in the jury box for prejudice or partiality." A. G. S. R. R. Co. v. McAlpine, 75 Ala. 113.

"The law, by imposing on railroads the duty and burden of disproving all acts of negligence, when they are shown to have inflicted an injury, is certainly exacting enough, without loading them down with additional burdens that are neither proved nor provable. Corporations, under the same measure of proof, are entitled to the same verdict and judgment as individuals are entitled to. Less than this is not a verdict according to the evidence." E. T., V. & G. R. R. Co. v. Bayliss, 75 Ala. 466.

The rule as to the burden and sufficiency of proof in five cases has been thus stated: In an action against a railroad company for destroying property by fire negligently emitted from the engine, where the complaint shows that the fire originated from the sparks thus emitted from defendant's engine, it makes out a prima facie case, though where the defendant railroad company shows that its engine was properly equipped with the best practical appliances for arresting sparks, and was in good order, and carefully managed, it rebuts the prima facie case. Nothing further appearing, the defendant is entitled to the general affirmative charge. L. & N. R. R. Co. v. Marbury Lbr. Co., 125 Ala. 237, 28 South. 438, 50 L. R. A. 620; Malone's Case, 109 Ala. 509, 20 South. 33; A. G. S. R. R. Co. v. Taylor, 129 Ala. 238, 29 South. 675; Reese's Case, 85 Ala. 497, 5 South. 283, 7 Am. St. Rep. 66.

[12] In the case under consideration, the defendant's proof met the requirements of the law in all respects as to the road, track, train, and all appliances which could have contributed to the injury, and also met the requirements as to competency, skill, and care of the servants and agents having anything to do with the accident.

There was no material conflict in the evidence of defendant's witnesses, and the plaintiff offered none on the subject. In other words, the evidence shows without conflict and to a reasonable certainty that the accident was an inevitable or unavoidable one, for which the defendant is not and ought not to be liable.

The evidence shows without conflict, and to a reasonable certainty, that the wreck of the train which injured plaintiff was due to a latent defect known as a "transverse fissure," and that science and art have discovered no means of detecting it.

The law does not contemplate that railroad companies will in general make their own rails, cars, or engines, and they purchase them in the market of persons supposed to be competent dealers, just as they buy their other articles. All that they can reasonably be expected to do is to purchase such cars and other necessaries as they have reason to believe will be safe and proper, giving them such inspection as is usual and practicable as they buy them. When they make such an examination, and discover no defects, they do all that is practicable, and it is no neglect to omit attempting what is impracticable. They have a right to assume that a dealer of good repute has also used such care as was incumbent on him, and that the articles purchased of him which seem right are right in fact. Any other rule would make them liable for what is not negligence, and put them practically on the footing of insurers. The law has never attempted to hold passenger carriers for anything which they could not avoid by their own diligence.

Here it was shown that the rail in question was purchased from competent and reliable dealers, and that it was subjected to the best known tests; and that they failed to reveal the defect. The other part of the roadbed, cross-ties, etc., were shown to be in good condition, and that frequent and usual inspections were made by competent agents, and no defect or danger discovered. That the train was being handled by competent and skillful and careful agents or servants, and they are acquitted of all possible imputable negligence as to the track, ties, etc. If the defendant in this case did not rebut the negligence imputable to it on account of the accident, then it is difficult to see how it would be possible so to do.

It would do no good to discuss the evidence further. It has been read and studied carefully, and we hold it rebutted all presumptions of negligence proximately causing the injury.

The general affirmative charges requested by the defendant as to each count should have been given.

Reversed and remanded.

ANDERSON, C. J., and SOMERVILLE and THOMAS, JJ., concur.