(91 South. 470)

### CENTRAL OF GEORGIA RAILWAY CO. v. ROBERTSON. (5 Div. 780.)

(Supreme Court of Alabama. Oct. 27, 1921.)

1. **Carriers ☞316(5)—Injury to passenger by derailment of coach raises presumption of negligence.**

Evidence that a passenger was injured by derailment of a railroad coach in which he was riding raises a prima facie presumption that the accident was due to the negligence of the carrier or its servants, and imposes on the carrier the burden of rebutting the presumption by evidence reasonably satisfying the jury the accident was not due to its negligence.

2. **Evidence ☞472(11)—Questions as to cause of wreck or breaking of rail invade province of jury.**

In an action for injuries to a passenger caused by the derailment of a coach, questions asked employés of defendant as to what, in their judgment, caused the wreck or what caused the rail to break, called for answers that invaded the province of the jury, and the witnesses were properly limited to stating the facts and circumstances observed by them, leaving the conclusions to be drawn therefrom to the jury.

3. **Evidence ☞539½(1)—Testimony by section foreman that transverse fissure in rail could be discovered before break held admissible.**

Where a passenger carrier claimed the derailing of a coach was caused by a transverse fissure in the rail, which could not have been discovered by inspection, testimony by a witness for plaintiff, who had been working in the railroad business for 38 years and as section foreman for 32 years, that such a fissure could be discovered before the rail broke if it came to the surface was admissible; there being evidence that the fissure in the rail in question did extend to the surface.

4. **Carriers ☞316(5)—Have burden of proving derailment could not have been prevented by highest degree of care.**

In an action for injuries to a railroad passenger resulting from the derailment of the

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

coach in which he was riding, the carrier has the burden of proving that the derailment could not have been prevented by the highest degree of care, skill, and diligence which is known to careful, diligent, and skillful persons engaged in such business.

**5. Carriers ⟨⟩320(22)—Evidence held not to show as matter of law derailment was not due to carrier's negligence.**

Evidence *held* not to show as a matter of law that the derailment of the coach in which plaintiff was a passenger could not have been prevented by the highest degree of care possible, but to raise for the jury questions whether the derailment was caused by a defect in the rail, as claimed by defendant, and whether that defect could have been discovered by proper inspection before the rail broke.

**6. Damages ⟨⟩132(3)—$19,000 for permanent injury to back reduced to $12,000.**

A verdict, awarding to a bookkeeper, 24 years of age, $19,000 damages for a fracture of the transverse process of the vertebræ which would probably be permanent, causing some pain and impediment in walking, after a former jury had allowed $8,000 for the same injury, shows partiality or prejudice, and the judgment will be reversed unless the plaintiff remits to $12,000, as provided by Acts 1915, p. 610.

Appeal from Circuit Court, Lee County; S. L. Brewer, Judge.

Action by J. P. Robertson against the Central of Georgia Railway Company, for damages for injuries suffered while a passenger. Judgment for the plaintiff; defendant appeals. Affirmed on condition plaintiff file remittitur of damages as required by the court. The facts on which opinion is rested sufficiently appear therefrom.

Barnes & Walker, of Opelika, for appellant.

The court erred in excluding the expert testimony. 202 Ala. 317, 80 South. 401. The question of negligence vel non was for the court, and the defendant was entitled to the affirmative charge. 203 Ala. 358, 83 South. 102; 113 Ala. 267, 22 South. 182. A new trial should have been granted. 109 Ala. 589, 19 South. 699; 175 Ala. 60, 56 South. 574.

Erle Pettus and J. Reese Murray, both of Birmingham, for appellee.

Recovery could be had under the doctrine of res ipsa loquitur. 203 Ala. 58, 82 South. 17. The fact of derailment and injury raises a presumption of negligence. 92 Ala. 209, 9 South. 363; 183 Ala. 222, 62 South. 772; 163 Ala. 55, 50 South. 113; 22 Wall. 341, 22 L. Ed. 877. The presumption is one of fact and not of law. 183 Ala. 318, 62 South. 804; 10 C. J. 1038; 3 Thompson on Negligence, 238. A witness, expert or otherwise, cannot be permitted to testify to the ultimate facts to be determined by the jury. 22 C. J. 502; 196 Ala. 113, 72 South. 16; 151 Ala. 392, 44 South. 48; 14 Ala. App. 136, 68 South. 568; 175 Ala. 194, 57 South. 23. The evidence presented a jury question. 203 Ala. 487, 83 South. 471; 203 Ala. 41, 81 South. 831; 203 Ala. 351, 83 South. 95; 203 Ala. 476, 83 South. 568. The scintilla of evidence rule applies in Alabama. 202 Ala. 681, 81 South. 637; 201 Ala. 336, 77 South. 998. The fact that the presumption is rebuttable does not take the question from the jury, even where rebuttable evidence is introduced. 6 Pet. 632, 8 L. Ed. 523; (D. C.) 136 Fed. 618; 74 N. J. Law, 570, 67 Atl. 303; 97 U. S. 237, 24 L. Ed. 901.

MILLER, J. J. P. Robertson, the plaintiff, was injured while a passenger on the train of defendant, the Central of Georgia Railway Company. He was going from Opelika to Birmingham on December 20, 1916; his fare had been paid, his ticket collected by the conductor, and he was occupying a proper place prepared for passengers. When this train, known as No. 9 Seminole Limited, running 40 to 45 miles an hour, reached a little trestle near Gold Ridge, Lee county, Ala., there was a jar, and several coaches turned over. The one occupied by plaintiff rolled down an embankment, and landed bottom upward. He was thereby injured, from which he suffered physically and mentally.

The plaintiff does not sue for punitive damages for wanton injury, but for compensatory damages in several counts for his injuries, including physical and mental suffering—in their nature permanent—caused by the alleged negligence of defendant or its agent or servants while acting in the line and scope of their employment.

[1] When it is shown by evidence that a passenger is injured in an accident on a railroad train by a derailment of the coach in which he is riding, a prima facie presumption will arise that the accident was due to the negligence of the company or its servants. Ala. G. S. R. Co. v. Hill, 93 Ala. 514, 9 South. 722, 30 Am. St. Rep. 65.

The undisputed evidence discloses to the jury in this case that the plaintiff was a passenger on the train of the defendant, the coach in which he was riding was derailed, and that he was injured thereby. This made out a prima facie case for the plaintiff, and shifted the burden of proof onto the defendant. Ala. G. S. R. Co. v. Hill, 93 Ala. 514, 9 South. 722, 30 Am. St. Rep. 65. To overcome this prima facie presumption from that evidence of plaintiff, the defendant must reasonably satisfy the jury by testimony "that the derailment [of the car] was not due to any negligence, and could not have been prevented by the exercise of the highest

⟨⟩For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

degree of care, skill, and diligence on the part of the carrier." . Ala. G. S. R. Co. v. Hill, 93 Ala. 514, 9 South. 722, 30 Am. St. Rep. 65; M. & E. Ry. Co. v. Mallette, 92 Ala. 209, 9 South. 363.

The defendant defended the case on the theory, and with evidence tending to show, that neither the defendant nor its servants or agents were guilty of any negligence; that it used the highest degree of care and skill in constructing, maintaining, and inspecting its roads and trains; that it was guilty of no negligence in the machinery and appliances used in its railroad; that its servants were careful, diligent, and skillful persons in such business; that the derailment was caused by a transverse fissure, a latent defect, in a rail of the track, "that science and art have discovered no means of detecting"; and that this rail was purchased from a competent and reliable manufacturer.

[2] J. F. Bonner and C. E. Weaver were witnesses for defendant. Bonner was track supervisor of defendant since 1906, and Weaver was engineer of maintenance of way. Both went to the wreck, and each testified as to what they saw and to the appearances of everything. They testified that this rail was broken in eight pieces, and that other rails were bent and dislocated. The defendant asked J. F. Bonner, its witness, this question:

"Mr. Bonner, from your experience and observation as track supervisor and your examination of the situation and surroundings there at the wreck, what, in your judgment, caused the train to leave the track?"

This question was asked C. E. Warren by defendant:

"I will ask you again, what, in your judgment, Mr. Warren, caused that rail to break?"

The court sustained the objection of plaintiff to each of these questions. Each question called for an answer that invaded the province of the jury. Each called for a conclusion, not facts. What caused the wreck and what caused the rail to break were conclusions to be determined by the jury from the facts and circumstances detailed by the witnesses to them. On these matters the witnesses should narrate the evidence, and the jury give the opinion by their verdict on the testimony. The court did not err in sustaining the objections to these questions. Montgomery & E. R. Co. v. Mallette, 92 Ala. 209, 9 South. 363; Lawrence v. Kaul Lbr. Co., 171 Ala. 300, 55 South. 111; L. & N. R. Co. v. Fleming, 194 Ala. 51, 69 South. 125; City of Anniston v. Ivey, 151 Ala. 392, 44 South. 48, 22 Corpus Juris, p. 502, § 597, subsec. 3.

[3] W. S. Burkes, witness for plaintiff, on rebuttal, testified that—

He was a section foreman; had been working in the railroad business for 38 years, and as section foreman for 32 years. "I have had experience and observation of what I have heard called transverse fissures. When I found them I called them pipes, cracks, or breaks; that's what they call transverse fissures in a rail. * * * I have seen a few, some 10 or 12 of these so-called transverse fissures, since I have been in the railroad business."

The court permitted plaintiff to ask this witness this question, over objection of defendant:

"I will ask you whether or not they were discovered·in the rail before the break, or whether they could be discovered in the rail before the break by surface inspection?"

The witness answered:

"If it came to the surface you can see it. It will roll over or spread out or wash down."

The court refused motion of defendant to exclude the answer. From the evidence the witness had sufficient knowledge of and actual acquaintance in his business with transverse fissures to give testimony to the jury on the subject. Some witnesses for defendant on direct and on rebuttal examination testified that the rail that was broken contained transverse fissures in it, shown at the broken place, and gave description of these and the nature·of them, in general, and how they could be seen; and that if they reached the surface they were too small to be visible. So, it was competent and relevant for the plaintiff by this witness to show how they can be discovered and their appearance, as he had sufficient personal experience with and actual knowledge of them to testify.

The general affirmative charge as to each count and to the complaint as a whole was asked by the defendant, by separate charges, each in writing, and each was refused by the court.

[4] Has the defendant established by the evidence, clear and uncontradicted, with the inferences or deductions therefrom undisputed—

"that the derailment [of the car] was not due to any negligence, and could not have been prevented by the exercise of the highest degree of care, skill and diligence on the part of the [defendant]?"

This must be done to overcome the presumption of law and fact from the evidence of plaintiff to entitle defendant to said charges. Cent. of Ga. R. Co. v. Robertson, 203 Ala. 358, 83 South. 102.

In this case on former appeal (203 Ala. 358, 83 South. 102), this court wrote:

"Mere lack of knowledge of defects will not excuse the carrier, unless he has exercised the proper degree of care and diligence to discover and prevent the defect."

What is the proper degree of care and diligence to be used to discover and prevent the defect? That care and diligence must be "the highest degree of care and diligence

which is known to careful, diligent, and skillful persons engaged in such business." Robertson Case, supra; Mallette Case, supra.

[5] A transverse fissure, from the testimony, appears to be a crossways crack in the rail, originally all interior; but is progressive in its nature until it reaches the surface. Here the evidence differed; some said then it can be seen by inspection, and others that it was invisible. The rail was placed on the track in 1911. It was broken in eight pieces. Other rails were bent. The running gear of one car was detached from it. The track was swept clean of rails and cross-ties for some distance. There was no swaying or jarring as the engine passed over the rail; the engineer felt a sudden jerk, looked back, and saw splinters flying from under a car all over the trestle, and applied his air brakes in emergency at once, and stopped the engine as soon as possible, and nine of the cars were thrown off the track. There was evidence that breaks in the rail all appeared fresh and bright on the surface, but the fissures within were dark. There was also testimony of one witness as follows:

"Those fissures did not come to the surface of the rail that I know of. There was one very large fissure that was discolored: I suppose there was a hair line crack in the rail before it broke; possibly there was—I did not see the crack. I don't remember how long after the wreck before I saw it; it was not the same day; it was two or three days after."

There were photographs of the ends of these broken rails in evidence showing the fissures; at least one from the photographs appears to have reached the upper side of the rail. One witness said:

"Why the different roads I have worked for has the track walked daily, every day in the week, and requires the foreman to make an inspection of his section twice a week, that is the method and practice among well-regulated railroads that I have worked for; I have worked for five."

This witness had been in the railroad business over 30 years. This defendant had no daily trackwalker; if so, the evidence did not show him. Six regular passenger trains, six or eight regular freight trains, and extra trains go over this track daily.

Many of the cars in this train came from a distance, other places. They were in Columbus, Ga., only about 10 minutes before leaving with this engineer and engine for Birmingham. They were inspected at Columbus. The main inspector went up and down the sides of the cars, inspecting and supervising it. He testified:

"That part of the wheel comes up under the body of the car, and some part of it is hidden by the rail, and there would be a part at the top and at the bottom that I could not see. I had proper air tests, and that was the main thing I was looking for. * * * I did not get down and look in under the cars. The inspector did that."

One of these inspectors testified that he examined the train of cars, and found "the train in good condition as far as I could tell," but as the time was short, about 10 minutes, the train being late, the work was hurriedly done by him and his assistant. He said, "I necessarily had to make a hurried inspection."

We feel that this law, written by Justice Sharpe, and approved by this court, is applicable to the facts and circumstances of this case, as found in Jackson Lbr. Co. v. Cunningham, 141 Ala. 214, 37 South. 448:

"How frequently the road ought in the use of due care to have been inspected was a question of fact, dependent, it may be, on the character of the material of which the road was composed and the use to which the same was subjected. The court could not properly have charged as matter of law that defendant's duty in that regard had been discharged by an inspection had on the Saturday next before the Monday of the accident as was assumed in refused charge 5."

We feel that it is unnecessary to quote more from or recite more of the testimony of this case, so it can be seen and realized what reasonable deductions can be drawn therefrom by the jury as to inspection of the train of cars and railroad track of the defendant. The testimony on these matters differ materially from the other trial. The court could not, under this evidence, properly charge the jury as a matter of law that the defendant had discharged its duty by exercising the highest degree of care, skill, and diligence in inspecting the train of cars and its railroad track for defects, as is known to careful, skillful, and diligent persons engaged in that business. That was the defendant's duty. Did it perform it? The jury alone under this evidence could properly answer it. Hence, after reading all this record carefully, it is obvious to us that it was for the jury to decide from this entire evidence whether "the wreck caused the rail to break or the broken rail caused the wreck," and for them to say whether or not the defendant or its agents, while acting in the line and scope of their employment, were guilty of negligence in inspecting the train or track, or both, to discover and prevent defects, and as a proximate consequence the car was derailed and the plaintiff injured. There was no error in refusing these charges. Jackson Lbr. Co. v. Cunningham, 141 Ala. 214, 37 South. 445; Mallette's Case, 92 Ala. 209, 9 South. 363; Hill's Case, 93 Ala. 514, 9 South. 722, 30 Am. St. Rep. 65.

[6] The defendant filed motion for new trial. It avers the damages assessed by the jury are excessive. The plaintiff was 21 years old when injured. After getting out of the car, he walked around, but felt a pain

in his back; and still has pain there when he bends over. He is now a bookkeeper. He had no trouble in walking, or pain in his back before the wreck. There was evidence of a fracture of one of the transverse processes of the vertebræ, and that it would probably be permanent in nature, causing some pain and impediment in walking.

The jury on former trial fixed the damages at $8,000; this jury rendered verdict for $19,000. The jury no doubt was prompted by partiality or prejudice, neither of which should enter into their deliberations or conclusions. Therefore we conclude from the evidence that the damages are excessive. Cent. of Ga. R. Co. v. White, 175 Ala. 60, 56 South. 574. If plaintiff will file consent in writing as provided by statute, within 30 days, for this judgment to be reduced to $12,000, this case will be affirmed, otherwise it will be reversed and remanded. Gen. Acts 1915, p. 610.

Affirmed conditionally.

ANDERSON, C. J., and SAYRE and GARDNER, JJ., concur.